**R. L. HARRIS et al., Plaintiffs-Appellees,**

**v.**

**The ATCHISON, TOPEKA AND SANTA FE RAILWAY CO.,**
**Defendant-Appellee,**

**Phillips Petroleum Co.,**
**Defendant-Appellant.**

**No. 75–1571.**

United States Court of Appeals,
Fifth Circuit.

Sept. 13, 1976.

T. L. Cubbage II, Jack Ritchie, Kenneth E. Rogers, Amarillo, Tex., for defendant-appellant.

Wayne B. Barfield, Amarillo, Tex., for R. L. Harris, et al.

A. B. Hankins, Michael C. Musick, Amarillo, Tex., for Atchison, T. & S. F. Ry. Co.

Before WISDOM and INGRAHAM, Circuit Judges, and GROOMS, District Judge.

INGRAHAM, Circuit Judge.

■ This Texas tort law diversity of citizenship case arises from a railway tank car explosion in which several firemen suffered personal injuries. The firemen recovered damages from the railroad company (Santa Fe) and cargo owner (Phillips). Santa Fe was granted indemnity against Phillips. Phillips appeals contesting the district court's finding on liability.[1] We affirm.

---

1. The indemnity issue was first discussed by appellee Santa Fe in its brief. Phillips responded in its reply brief, contesting the ruling of the district court. We have considered the issue nevertheless.

## FACTS

On December 15, 1973, four Santa Fe employees were switching railroad cars at the rail yards in Borger, Texas. During the switching operations, several cars were moved onto the scale track in order to prepare a train for an eastbound departure.[2] Other cars were on an adjacent track destined for a westbound departure.

Believing that the handbrake was set, the switching crew used an empty boxcar as a "bumping post" for other cars to be set on the scale track. After placing the boxcar on the track, the crew allowed a tank car containing 30,000 gallons of butadiene to roll freely and connect with the boxcar. Approximately seven other cars were bumped into the eastbound chain, but their handbrakes were not set.[3]

Subsequently, the crew foreman noticed the boxcar and the loaded tank car to which it was coupled rolling north on the scale track downgrade. He notified the yardmaster by walkie-talkie, and the yardmaster was able to switch the runaway cars onto an empty track. A Santa Fe employee jumped aboard this "cut" of cars and brought it to a stop by using the handbrake on the tank car. The crew foreman had just finished notifying the yardmaster of the first cut of cars when he saw a second cut of four cars rolling down the same track. He was unable to contact the yardmaster, who saw the second cut of cars as it approached but was unable to board it. The second cut of cars rolled down the track until it collided with the first cut. The collision caused both cuts of runaway cars to be thrown several hundred feet north of the point of impact. The empty boxcar was derailed but remained upright; the tank car was also upright but was leaking butadiene vapor from a puncture the width of a pencil.

The yardmaster, recognizing that the leaking butadiene created a dangerous situation, called the police and fire departments. The fire department attempted to secure the area by removing all potential ignition sources. The police set up barricades to keep unauthorized persons out of the area.

The yardmaster also called Phillips and requested help. Several Phillips employees arrived to assist in the safety efforts. All agreed that the butadiene should be transferred to another tank car. While Santa Fe employees moved an empty tank car next to the damaged tank car, Phillips employees prepared for transfer operations. Initially, the butadiene was transferred without pumps by venting the empty car and allowing the pressure differential to be the operative force. When the pressure all but ceased, Phillips, with the acquiescence of Santa Fe, elected to continue the transfer by using a pump with an internal combustion engine. The pump was placed between the two tank cars, and the hoses were connected to continue the transfer procedure.

After the pump had been in use for approximately two hours, Phillips decided to hasten the process in order to complete it before nightfall or a change of the then ideal wind direction. Phillips employees went atop the tank cars to open the valves. Another Phillips employee removed the pressure gauge from the discharge side of the pump. A small amount of butadiene leaked from the pump and a tiny flame appeared. While the Phillips employee was attempting to reconnect the pressure gauge, butadiene suddenly sprayed from under the connection above the discharge pipe. A fire then erupted between the two

---

2. The scale track is on a downgrade to the north. A map (Fig. 1) is attached to depict the scene of the collision.
 A—the empty tank car into which the chemical was transferred;
 B—the damaged tank car from which the chemical was transferred;
 C—the first car in the second cut of runaway cars;
 D—the empty boxcar serving as the "bumping post" for the formation of the eastbound train.

3. Rule 811 of Santa Fe's company rules requires the switching crew to secure the cars with sufficient hand brakes.

tank cars and more fire equipment was called to the scene.

Firemen sprayed water on the two tank cars until the fire chief warned of the possibility of rupture and instructed them to abandon their efforts. When one of the tank cars eventually ruptured, the contents were ignited and a large ball of fire was hurled into the air causing numerous grass fires in the area. While firemen combated the grass fires, the other tank car ruptured, producing an even larger fireball which injured the plaintiffs.

Four firemen subsequently brought this action against Santa Fe and Phillips for personal injuries sustained from this explosion. Appellant presents numerous assignments of error attacking the findings of fact and conclusions of law of the district court.

## NEGLIGENCE

■ At the outset we are confronted with Phillips' argument that the "firemen's rule" should preclude recovery.[4] Although many jurisdictions forbid recoveries by firemen for injuries suffered at the scene of negligently caused conflagrations,[5] Texas has no such rule. Its courts have sustained recoveries by firemen on at least three occasions. In *Houston Belt & Terminal Ry. Co. v. O'Leary*, 136 S.W. 601 (Tex.Civ.App.1911, writ ref'd), defendant railroad negligently allowed a boxcar containing fireworks to collide with other cars during switching operations. Plaintiff's intestate, the chief engineer of the fire department, approached the boxcar to extinguish the fire. One of a recurring series of explosions fatally injured him. A jury verdict for plaintiff rejected defense assertions of *volenti non fit injuria* and contributory negligence. The court affirmed, concluding that each explosion constituted an independent negligent act. 136 S.W. at 605. Phillips refers in its brief at pages 19–20 to *Suttie v. Sun Oil Co.*, 15 Pa.D. & C. 3 (1930) for a direct criticism of *O'Leary*:

> "This reasoning seems to us to be straining for a theory upon which to support a liability . . . . [The case is against the trend of the decisions and advances a doctrine which . . . is unsound and would tend to produce mischievous consequences."

15 Pa.D. & C. at 7. This criticism is largely irrelevant to our discussion because it is directed at the theory of negligence rather than the "firemen's rule." In any event, it proves too much. Not only do Texas courts have no objection to recoveries by firemen, they are even willing to indulge in strained reasoning to permit such recoveries. The Texas Supreme Court adopted the *O'Leary* theory of continuing acts of negligence in allowing a fireman to recover in a case arising out of the same accident as *O'Leary. Houston Belt & Terminal Ry. Co. v. Johansen*, 107 Tex. 336, 179 S.W. 853 (1915). Despite scholarly criticism,[6] the continuing negligence theory remains viable in Texas. *McAfee v. Travis Gas Corp.*, 137 Tex. 314, 153 S.W.2d 442 (1941); *Acme Products Co.*

---

4. Phillips' contentions with respect to defenses to negligence were adopted by appellee Santa Fe in its brief at page 2.

5. *See Wax v. Co-operative Refinery Ass'n*, 154 Neb. 805, 49 N.W.2d 707 (1951), which holds that firemen assume the risks attendant to firefighting. *See also Suttie v. Sun Oil Co.*, 15 Pa.D. & C. 3 (1930), which argues that owners facing potential liability for injuries to firemen would delay in summoning them. Dean Prosser calls this argument "preposterous rubbish." Prosser, Law of Torts 397 (4th ed. 1971). Appellant also argues that the tax collector is a better risk allocator than the insurance premium collector, and that judicial determination of the cause of fires is lengthy and difficult, citing

*Giorgi v. Pacific Gas & Electric Co.*, 266 Cal. App.2d 355, 72 Cal.Rptr. 119 (1968). These arguments are diluted because they can be applied to many other public employees and private plaintiffs whose right to sue has not been restricted. Prosser, *supra*, at 397.

The "firemen's rule" has not met with universal approbation in other jurisdictions. *See Cameron v. Abatiell*, 127 Vt. 111, 241 A.2d 310 (1968); *Dini v. Naiditch*, 20 Ill.2d 406, 170 N.E.2d 881 (1960); *Meiers v. Fred Koch Brewery*, 229 N.Y. 10, 127 N.E. 491 (1920).

6. Bohlen, "The Duty of a Landowner Toward Those Entering the Premises of Their Own Right," 69 U.Pa.L.Rev. 237, 252 n. 39 (1921).

*v. Wenzel,* 448 S.W.2d 139 (Tex.Civ.App.—Houston [1st Dist.] 1969, no writ).

Phillips' bare assertion that fireworks can be distinguished from butadiene is unpersuasive. In any event, recoveries by firemen have not been limited to fireworks explosions. A municipal fireman prevailed against a utility for its negligence in permitting gas to escape in an already burning building, the court declaring:

> "If a gas company is guilty of negligence, there is no doubt that it is liable for the injury to, or the death of, a fireman, policeman, or other officer injured or killed while in the performance of his official duty or service to protect the property or lives of others."

*Texas Cities Gas Co. v. Dickens,* 140 Tex. 433, 168 S.W.2d 208, at 210–11 (1943) quoting 24 Am.Jur. Gas Companies § 50 (1939). Phillips attempts to distinguish the case by arguing that the utility's negligence occurred after a fire had begun. The broad language adopted by the court shows that appellant has raised a distinction that makes no difference. Given the recent trend in Texas to eliminate absolute bars to recovery,[7] we feel safe in holding that public safety officers do not lose the right to sue for damages upon accepting public employment.

Phillips next argues that it owed no duty to plaintiffs in their capacity as firemen, and therefore could not be liable to them. This argument is grounded in the Texas rules of law governing injuries caused by dangerous conditions on the land of the owner or occupier.[8] Assuming for the purposes of this section that plaintiffs are invitees,[9] the duty owed by defendants to the firemen is that of reasonable care. *Rosas v. Buddies Food Store, supra,* at 536. If the danger is "open and obvious," then the occupier owes no duty to warn or protect others. *Halepeska v. Callihan Interests, Inc.,* 371 S.W.2d 368 (Tex.1963). The test is subjective, requiring the plaintiff to prove that he had no actual knowledge of the dangerous condition and that he did not fully appreciate the nature and extent of the danger. *Adam Dante Corp. v. Sharpe,* 483 S.W. 452 at 455 n.1 (Tex.1972). Defendant may discharge his duty to an invitee by taking sufficient steps to warn or protect him. *J. Weingarten, Inc. v. Scott,* 456 S.W.2d 266 (Tex.Civ.App.—Houston [14th Dist.] 1970, no writ). We find ample evidence to support Finding of Fact XXIII by the district court that plaintiffs neither knew of nor appreciated the nature and extent of the danger. The second explosion, which injured the plaintiffs, was far

---

**7.** *See* Vernon's Ann.Tex.Stat. art. 2212a (Supp. 1975) (comparative negligence instituted); *Farley v. M M Cattle Co.,* 529 S.W.2d 751 (Tex. 1975) (assumption of risk defense abolished in most negligence cases).

**8.** None of the plaintiffs were on the premises of the railyard at the time of the second explosion. They were fighting grass fires west of Brain Street. The "no duty" rules traditionally apply to persons injured on the premises of the owner or occupier. *See, e. g., Rosas v. Buddies Food Store,* 518 S.W.2d 534 (Tex.1975). Phillips' argument would be properly labeled as an assumption of risk defense, which was still recognized in Texas when this case was tried in January 1975. *Farley v. M M Cattle Co., supra.* Because "open and obvious dangers" are essentially the same under either doctrine, *Adam Dante Corp. v. Sharpe,* 483 S.W.2d 452 at 455 n. 1 (Tex.1972), we will consider Phillips' contentions on the merits.

**9.** Phillips notes in its brief at p. 25 n. 42 that "the fireman, because of the public nature of his rights and duties, is in a class of his own."

Texas courts have on occasion created exceptions to the "no duty" rule for persons enjoying a status more privileged than that of invitee. *See Dunlap v. Executive Inn Motor Hotel Corp.,* 404 S.W.2d 842, 844 (Tex.Civ.App.—Dallas 1966, writ ref'd, n. r. e.), which holds that the "no duty" rules are not to be applied indiscriminately beyond the usual occupier-invitee relationship. The case involves an innkeeper and its guest.

*See also Blanks v. Southland Hotel, Inc.,* 149 Tex. 139, 229 S.W.2d 357, 360 (Tex.1950):

> "While his situation in this regard was voluntary in the sense he willingly became a tenant on the ninth floor, it was involuntary in the sense that it was the only way provided by the Hotel whereby he, as such tenant, could use his room."

The court refused to find plaintiff contributorily negligent as a matter of law. If plaintiff in *Blanks* overcame this objective test, surely the firemen would prevail under the subjective test of the "open and obvious danger."

**688**

more powerful than the first. Unlike the first explosion, it was not preceded by the audible release of the pop-off valve on the tank car. Appellant's argument is based upon a misconception of the risk under consideration here. The particular risk to which plaintiffs were subjected was that an explosion from which they could not escape would occur. The second explosion, which came without warning, surprised the firemen who were about 250 feet from the unexploded tank car and believed themselves to be in a safe position. Events proved otherwise. Phillips does not argue that the firemen were contributorily negligent, an issue which would require an objective evaluation of their behavior. For the purposes of the "no duty" rule, the finding of the district court with regard to plaintiffs' subjective state of mind is not clearly erroneous and must be affirmed. F.R.Civ.P. 52(a).

Phillips next contends that the *Delhi-Taylor* rule shields defendants from liability. This doctrine imputes the knowledge of a foreman of an independent contractor to the employees of the contractor, thus discharging defendant's duty when the foreman is sufficiently aware of the dangerous condition and the nature and extent of the risk. *Delhi-Taylor Oil Corp. v. Henry*, 416 S.W.2d 390 (Tex.1967). We hold that *Delhi-Taylor*, even if applicable, does not insulate defendants from liability for the harm of the second explosion.

By analogizing to the independent contractor situation, Phillips contends that plaintiffs cannot recover because Fire Chief Leonard was aware of the dangerous condition of the unexploded tank car. Phillips' misunderstanding of the risk under consideration also defeats this contention. Chief Leonard testified that explosions can always be considered a possibility whenever firemen answer a call "whether it is a tank or residence . . . or a trash barrel." But the *particular* risk which Chief Leonard as well as the injured firemen failed to appreciate was the suddenness and magnitude of the second explosion.

Similarly, Phillips' argument that plaintiffs had the last clear chance to escape harm is vitiated by this misconception. Findings of Fact XVII through XXIII, none of which are clearly erroneous, show that plaintiffs did not have an opportunity to avoid being harmed by the second explosion. The first explosion did not sufficiently alert the firemen to their peril. When the second tank car exploded without the prior release of the pop-off valve, plaintiffs Harris, Davis and Clark attempted to outrun the expanding fireball. It engulfed them. Plaintiff Lusk, who was also some 250 feet from the tank car, was knocked down and stunned by the second explosion. The district court's refusal to find that plaintiffs had the last clear chance was not error.

Phillips next argues that the "transitory danger" rule precludes recovery on the facts. There is no need to give a warning "where . . . the dangerous condition arises from and is inherent in the performance of the work which the contractor was employed to do rather than from any condition of the premises where the work was to be performed." *Humphreys v. Texas Power & Light Co.*, 427 S.W.2d 324, at 329–30 (Tex.Civ.App.—Dallas 1968, writ ref'd, n. r. e.). The defendant is not liable where neither the work nor the location is intrinsically dangerous. *Nance Exploration Co. v. Texas Employers' Ins. Ass'n*, 305 S.W.2d 621 (Tex.Civ.App.—El Paso 1957, writ ref'd. n. r. e.), *cert. denied*, 358 U.S. 908, 79 S.Ct. 235, 3 L.Ed.2d 229 (1958). In *Nance*, unlike our situation, the condition became dangerous only because of the method in which the work was performed. 305 S.W.2d at 627. The railyard and the surrounding area harbored a dangerous condition regardless of the intervention of the firemen. Their attempt to combat the grass fires, which are potentially catastrophic in the dry plains region around Borger, did not exacerbate the problem, much less make it dangerous. The transitory danger rule is inapplicable.

The district court's finding of negligence by Phillips cannot be overturned.

## PROXIMATE CAUSE

 Phillips also appeals the ruling that its negligence was a new and independent agency which was the proximate cause of the injuries. The district court held that Santa Fe's negligence had come to rest and therefore was not a proximate cause. We believe the district court correctly applied the law with respect to causation. Phillips and Santa Fe have cited numerous cases to support their arguments: two salient cases are *Robert R. Walker, Inc. v. Burgdorf*, 150 Tex. 603, 244 S.W.2d 506 (1952), and *Bell v. Campbell*, 434 S.W.2d 117 (Tex.1968). In *Walker*, employees of the defendant service station drained a gas tank containing water and gasoline onto the driveway of the station. As they hosed down the driveway to direct the gasoline to the gutter and sewer of the street, a bystander threw a lighted match into the stream on the driveway. The court held that the negligence of the bystander merely concurred with that of the service station attendants. 244 S.W.2d at 510. In *Bell*, the automobiles of Mrs. Campbell and a Mr. Marshall collided. Marshall's trailer became unhitched and overturned on the highway. Messrs. Bell, Payton and Bransford attempted to remove the trailer. A Mr. Fore came over the hill and ran down the three Samaritans. Plaintiffs settled with Fore and sued Marshall and Campbell. The Supreme Court held:

"The active and immediate cause of the second collision, however, was an entirely independent agency, Fore. All forces involved in or generated by the first collision had come to rest, and no one was in any real or apparent danger therefrom. No one would have been injured if there had not been a second collision."

434 S.W.2d at 120.

Phillips attempts to distinguish *Bell* by arguing that the forces set in motion by Santa Fe had not come to rest, and that a real and apparent danger still existed. Warren Acker, a Phillips employee who was at the transfer, testified that he considered the transfer operation neither hazardous nor particularly dangerous. Another Phillips employee at the scene, Earl Cleveland, testified that there was "not a great lot of danger" under the conditions existing when he went out to the scene of the derailment. The district court was entitled to weigh this testimony in finding the facts on the issue of proximate cause. F.R.Civ.P. 52(a). The citation of *Bell v. Campbell, supra*, in Conclusion of Law VIII shows that the district court considered the language of the case in applying the facts to reach a decision.

The *Bell* opinion distinguishes the *Walker* case and four other cases cited by Phillips in support of its argument: *McAfee v. Travis Gas Corp.*, 137 Tex. 314, 153 S.W.2d 442 (1941); *Gulf, C. & S. F. Ry. Co. v. Ballew*, 66 S.W.2d 659 (Tex.Comm.App.1933, holding approved); *Texas Power & Light Co. v. Holder*, 385 S.W.2d 873 (Tex.Civ.App.—Tyler 1964), writ ref'd, n. r. e. 393 S.W.2d 821 (Tex.1965); *Texas Public Service Co. v. Armstrong*, 37 S.W.2d 294 (Tex.Civ.App.—Austin, 1931, writ ref'd).

"In each of the above cited cases . . . the condition created by the defendant's negligence was an active and efficient cause of the injury. According to the jury's findings in *Ballew*, the passenger's death was proximately caused by the negligence of the railroad in using a defective coupling, two engines, and too many cars in the train. The two engines supplied the force, and the rear fifteen coaches the resistance, which broke the train apart and caused the decedent to fall to the track when the emergency cord was accidentally pulled by a fellow passenger. The electric wires negligently maintained by the defendants in *Holder* and *Armstrong*, the leaking gas line which the defendant negligently failed to inspect and repair in *McAfee*, and the gasoline which the employees of the defendant negligently drained on the driveway of the filling station in *Walker*, were the sources of the energy which caused the injuries. . . .

"The situation here is quite different. All acts and omissions charged against respondents had run their course and were complete. Their negligence did not actively contribute in any way to the

injuries involved in this suit. It simply created a condition which attracted Payton, Bell and Bransford to the scene, where they were injured by a third party. Respondents' negligence was not a concurring cause of their injuries."

*Bell v. Campbell*, supra, at 122.

Had the fire erupted at the puncture from which vapor was escaping, Phillips might prevail. However, the fire originated at the hoses and pump used by Phillips for the transfer, and Phillips' counsel stipulated in open court that the transfer operation was under the control of his client. Just as Mrs. Campbell's negligence came to rest though the trailer remained on the highway, so did the forces unleashed by Santa Fe subside though vapor was still escaping. We must take the Texas law as we find it. *Erie R. R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Parson v. United States*, 460 F.2d 228 (5th Cir. 1972).

## INDEMNITY

We also agree with the district court that Santa Fe was entitled to indemnity against Phillips. The Texas courts have enunciated several tests for indemnity. *See Wheeler v. Glazer*, 137 Tex. 341, 153 S.W.2d 449 (1941). These tests can best be rationalized as holding that a breach of a duty owed by one co-tortfeasor to another entitles the latter to indemnity. *Austin Road Co. v. Pope*, 147 Tex. 430, 216 S.W.2d 563 (1949); Hodges, "Contribution and Indemnity among Tortfeasors," 26 Texas L.Rev. 150, 153–65 (1947). The defendant whose negligence merely created a condition is entitled to indemnity from the defendant whose active negligence proximately caused the injury. *Austin Electric Ry. Co. v. Faust*, 133 S.W. 449 (Tex.Civ.App. 1911, writ ref'd). Although Santa Fe could not relieve itself of liability by contracting away its responsibilities and duties to Phillips, *Loyd v. Herrington*, 143 Tex. 135, 182 S.W.2d 1003 (1944), Phillips had the duty to perform the transfer without negligence. Its failure to do so entitles Santa Fe to indemnity. *Kampmann v. Rothwell*, 101 Tex. 535, 109 S.W. 1089 (1908).

Our affirmance makes unnecessary a discussion of Phillips' claim that *res ipsa loquitur* was not applicable as an alternative basis for the judgment of the district court.

AFFIRMED.