**Ramon ALMARAZ and Ector Fabela, Appellants,**

**v.**

**Rodney BURKE, Appellee.**

**No. 2–91–112–CV.**

Court of Appeals of Texas,
Fort Worth.

March 18, 1992.

Rehearing Overruled April 21, 1992.

Jearl Walker, Fort Worth, for appellants.

David G. Hart, Arlington, for appellee.

Before HILL, MEYERS and DAY, JJ.

## OPINION

HILL, Justice.

In this automobile collision case, Ramon Almaraz and Ector Fabela, appellants, appeal from a judgment against them in favor of Rodney Burke, the appellee, following a jury trial.

The appellants contend in four points of error that the trial court erred: (1) in rendering judgment against them because there was no submission and no finding of fact that Almaraz' negligence proximately caused an initial accident and there was no evidence or, alternatively, insufficient evidence that Almaraz' negligence proximately caused the second accident; (2) in submitting a question concerning Almaraz' negligence because there is no evidence or, alternatively, insufficient evidence to support submission of negligence on the part of Almaraz in connection with Burke's accidents; (3) in submitting a question concerning apportionment of negligence because there is no evidence or, alternatively, insufficient evidence, to support the submission of attribution on the part of Almaraz in connection with Burke's accidents; and (4) in admitting, over a hearsay objection, testimony of the investigating police officer as to the license plate number he had received from the first accident victim, who had previously received the number from a third party who was passing by at the time of the first collision.

We affirm because we hold that the evidence is sufficient to support findings that Almaraz' negligence was a proximate cause of the second accident, even though

it occurred ten minutes after the first; and because the investigating officer's testimony as to the license plate number that one of the parties to the first accident had given him was properly admitted into evidence, since the driver who gave him the number was still excited from the accident when he gave him the number, as was the passerby when he gave the number to the party who passed it on to the officer.

The appellants argue in their first three points of error that the trial court erred in rendering judgment against them because there was no submission or finding of fact that Almaraz proximately caused an initial accident, and that there was no evidence or, alternatively, insufficient evidence to support questions concerning negligence or the attribution of negligence of Almaraz in connection with Rodney Burke's accidents.

Undisputed evidence shows that early in the morning of March 26, 1988, a van collided with a Fiat driven by Kenneth Hoffman, who is not a party to this appeal, as Hoffman was traveling eastward on Interstate 30 at the overhead in downtown Fort Worth. Hoffman testified that the van kept weaving over in his lane. He said that the van came over and hit the back of his car in the left rear. He indicated that he was in the right hand lane at all times.

The evidence shows that the accident disabled Hoffman's vehicle, leaving it sitting sideways on the overhead. A passing motorist, Herb Russell, pursued the van and obtained its license number. The license number, 8326DH, was traced to Fabela's vehicle, which was being driven early that morning by Almaraz.

Almaraz did not deny that the accident occurred and admitted driving over the overhead about 2:20 a.m. on the morning the accident occurred, but said he found it hard to believe that he was involved. He said he had not noticed any dents in the van before he ate at Taco Cabana, where he had been just before he arrived at the overhead, but acknowledged that there were dents in the van after the accident was supposed to have occurred. He admitted that there are a lot of blind sides when driving a van.

Approximately ten minutes after the first accident, Burke drove his Bronco into Hoffman's car, whereupon another driver, Anita Coleman, drove her car into Burke's Bronco.

The first question submitted to the jury asked them whether the negligence, if any, of Almaraz, Coleman, Hoffman, and Burke proximately caused the occurrence in question. They were asked to answer "yes" or "no" as to each. They answered "yes" as to everyone but Coleman. The second question asked the jury to find the percentage of negligence attributable to each driver they found negligent. In answer to that question the jury attributed 40% of the negligence to Almaraz, 10% to Hoffman, and 50% to Burke.

In response to a question from the jury, the trial court instructed them that "occurrence in question" in question 1 referred to Rodney Burke's collision of March 26, 1988.

Prior to trial, Burke had settled with Hoffman and had received an assignment of Hoffman's property damage claim.

Almaraz contends that the jury made no finding that he was negligent in the first collision, his collision with Hoffman, and that the evidence does not support his being negligent with respect to the subsequent collisions, since they occurred after he had been down the road for ten minutes, and were instead caused by the new and intervening agency of Burke.

We hold that the evidence, as we have outlined it, is both legally and factually sufficient to support the jury's conclusion that Almaraz' negligence was a proximate cause of the collision between Hoffman's disabled vehicle and the Bronco driven by Burke.

■ Under these facts we see no validity to Almaraz' contention that he could not have any legal responsibility for the collision between the Hoffman and Burke vehicles just because it occurred ten minutes after Almaraz' collision with the Hoffman vehicle. He does not contend that there is no evidence to show that he was negligent in causing the Hoffman vehicle to become disabled on the freeway. A rational jury

could have concluded from the evidence that his causing the Hoffman vehicle to be disabled on an interstate highway, which evidence showed to be not as well lit as other streets in the area, was a cause of the collision between the Hoffman and Burke vehicles, and that such a collision would have been reasonably foreseeable under these circumstances.

Almaraz relies on the cases of *Bell v. Campbell*, 434 S.W.2d 117 (Tex.1968) and *Harris v. Atchison, Topeka and Santa Fe Ry. Co.*, 538 F.2d 682 (5th Cir.1976). We find *Bell* to be distinguishable from the facts of this case. In *Bell*, two automobiles collided on U.S. Highway 67 near Texarkana. It was dark and a light rain was falling. Both vehicles left the road, but a trailer being pulled by one of the vehicles overturned and came to rest in the north traffic lane of the highway. The accident occurred near the crest of a hill. One volunteer took a flashlight to the crest of the hill to signal westbound traffic. Despite his efforts, however, a westbound driver either ignored or failed to see the signal and caused injury to other volunteers who were attempting to remove the trailer from the roadway. The westbound driver had been drinking. A broken whiskey bottle was found in the westbound vehicle. Two other bottles with their seals unbroken, also apparently belonging to the westbound driver, were found nearby.

The Texas Supreme Court held that the two drivers of the first accident could not reasonably foresee that the manner in which they operated their vehicles prior to the first collision might lead to the serious injury or deaths of persons not even in the zone of danger as a result of their being struck by another automobile which was some distance away at the time. *Bell*, 434 S.W.2d at 121.

We find that case to be distinguishable on its facts. We agree with the Supreme Court that the two drivers in the initial accident in *Bell* could not reasonably foresee that a drinking driver would come along later, ignore the flashlight signal of danger, and cause injury to third parties

attempting to remove the trailer from the highway.

Unlike *Bell*, in this case there is no indication that anyone would have been able to signal oncoming motorists, nor have we been directed to any evidence that Burke, the driver of the Bronco involved in the second collision, had been drinking at the time of the accident. Additionally, we note that this accident occurred early in the morning on an urban interstate highway, on a four-lane overhead with concrete bannisters on either side and in the median. There was evidence that the overhead was not as well lit as other streets in the area. Considering all this evidence, we believe that a rational trier of fact could determine that a driver could reasonably foresee that a wrecked vehicle remaining in the interstate at that location at that time of day could be involved in another accident before preventive action could be taken.

The case of *Harris*, 538 F.2d at 682 relies upon *Bell*, and does not involve an automobile accident. It is therefore even more distinguishable from the facts of this case. We overrule points of error numbers one, two, and three.

The appellants urge in point of error number four that the trial court erred in admitting the hearsay testimony of the investigating officer as to the van's license plate number, a number that the officer had obtained from Hoffman, the driver of the Fiat that had collided with the van. Hoffman had in turn obtained the number from Russell, the passerby who had pursued the van.

 Hoffman testified that he received the van's license plate number from Herb Russell, who at the time appeared to be excited from the occurrence of the accident. Officer Kelly Scott Adams testified that Hoffman gave him the license number of the van and that when he talked to Hoffman, Hoffman seemed to be excited from being in the accident.

TEX.R.CIV.EVID. 803(2) provides that a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition is not excluded by the

hearsay rule. In view of the testimony that Russell's statement to Hoffman and Hoffman's statement to the officer were both made while they were excited by the accident, we hold that the trial court did not err by admitting them into evidence. TEX.R.CIV.EVID. 805.

Almaraz relies on the case of *First Southwest Lloyds Ins. v. MacDowell*, 769 S.W.2d 954, 959 (Tex.App.—Texarkana 1989, writ denied). In that case, an arson case, the court upheld the trial court's exclusion of the fire marshall's testimony that a witness had seen someone leave the scene of a fire and had given chase to the fleeing vehicle. Although the opinion states that the witness's statement was a narrative account, given after he had returned to the scene of the fire, the opinion does not reflect whether the witness was still excited from the fire and the chase at the time the statement was given, nor does it state whether that mattered in reaching the result. If the witness in that case were still excited from the event at the time he told the fire marshall what had just happened, we would have held that the evidence qualified as an exception to the hearsay rule in accordance with rule 803(2). On the other hand, if there were no evidence that the witness was still under the excitement of the preceding events, we would agree with the opinion. In any event, we either distinguish this case on the basis that there was evidence that both Russell and Hoffman were still excited either from the accident itself or the subsequent chase at the times that they passed on the van's license plate number, or we decline to follow it based on our interpretation of rule 803(2). We overrule point of error number four.

The judgment is affirmed.