**J. WIGGLESWORTH COMPANY and William Kirby, Appellants,**

v.

**Michael PEEPLES, Appellee.**

**Michael Peeples, Appellant,**

v.

**J. Wigglesworth Company and William Kirby, Appellees.**

No. 2–97–377–CV

Court of Appeals of Texas, Fort Worth.

Jan. 28, 1999.

Fletcher & Springer, Kathryn Shilling, and Michael S. Francis, Dallas, for Appellant.

David Miller, Dallas, for Appellee.

Before DAY, DAUPHINOT, and BRIGHAM, JJ.

## OPINION

SAM J. DAY, Justice.

J. Wigglesworth Company and William Kirby ("Appellants") appeal from an adverse judgment rendered in favor of Michael Peeples. A jury found Kirby twenty percent liable for injuries Peeples incurred when a truck driven by a third party hit Peeples's vehicle. Peeples appeals from the trial court's remittitur of damages. We reverse and render in part and affirm in part.

## I. BACKGROUND

This appeal involves a trucking accident that occurred September 20, 1994, at the end of a traffic backup caused by Kirby. Kirby, a truck driver for J. Wigglesworth Company,

was traveling westbound on Interstate 20 in Louisiana with a mobile home. Kirby's permit to carry the wide load required him to exit I–20 at milepost 69. Kirby missed his exit and continued into a construction area where wide loads were prohibited. The westbound lanes were completely closed, with traffic diverted into one of the eastbound lanes. Only one lane was open in each direction. Concrete barriers divided the single lanes of traffic and a ditch bordered the right-hand side of Kirby's lane.

Kirby reached a bridge in the construction zone that was too narrow for his truck to pass through. He stopped, blocking his lane and backing traffic up behind him for almost 300 yards. At the end of the backup, behind forty to fifty other vehicles, Roger Dick stopped his eighteen wheeler and watched as cars tried to move out of Kirby's way to give him room to back up.

Michael Peeples was driving a truck directly behind Dick. As he approached the area, he heard Kirby talking on the CB about missing his exit. Peeples thought it was idle conversation until he heard Kirby say that he didn't think his truck would fit through the bridge. As traffic ahead of him began braking, Peeples used his CB to warn truck drivers behind him to slow down. Peeples then heard Kirby say he was going to back up and realized that traffic was about to stop completely. Peeples got on the CB again and warned truckers that traffic was coming to a standstill. As Peeples brought his truck to a halt behind Dick's truck, he heard a woman's voice on the CB radio say, "I can't stop." In his rear-view mirror, he saw Sheryl Harmon's eighteen wheeler bearing down on him. As Peeples braced for the impact, Harmon's truck struck his vehicle, propelling it into the back of Dick's truck.

Peeples filed a negligence suit against Appellants, Harmon, and Harmon's employer, Southwestern Carriers, Inc.[1] A jury found Appellants twenty percent negligent for Peeples's injuries, and Harmon and her employer eighty percent negligent. The jury awarded Peeples a total of $108,409 in damages: $75,000 for physical pain and mental anguish; $25,000 for physical impairment; $7,200 for loss of earning capacity; and $1,209 for medical care in the past.

Appellants moved for judgment non obstante veredicto (N.O.V.), contending that, as a matter of law, Kirby's conduct was too remote to be the cause in fact of the accident and Peeples's injuries. Appellants also filed a motion for new trial, arguing that the jury's verdict was not supported by factually sufficient evidence. In addition, Appellants moved for a remittitur, contending that the jury's damage award was not supported by factually sufficient evidence. The trial court denied the motion for judgment N.O.V. and motion for new trial, but ordered a remittitur of $25,000 for physical pain and mental anguish, and $12,500 for physical impairment. The trial court also held that Appellants were entitled to a $20,000 credit based on the out-of-court settlement between Peeples, Harmon, and Harmon's employer. The trial court rendered judgment in favor of Peeples for $50,909, plus costs and pre- and post-judgment interest.

On appeal, Appellants bring three points, contending that (1) the trial court erred in denying the motion for judgment N.O.V., (2) the trial court erred in refusing Appellant's request for an instruction in the court's charge on new and independent cause, and (3) the evidence is factually insufficient to support the jury's finding that Appellants proximately caused Peeples's injuries. Peeples has also appealed, contending that the trial court erred in ordering a remittitur because the evidence was factually sufficient to support the jury's verdict.

## II. SUFFICIENCY OF THE EVIDENCE

In their first and third points, Appellants challenge the legal and factual sufficiency of the evidence to support the jury's finding that Kirby's negligence proximately caused Peeples's injury. Specifically, Appellants contend that the trial court erred in overruling their motion for judgment N.O.V. and

---

1. The parties stipulated that Kirby was acting in the course and scope of his duties for his employer, J. Wigglesworth Company and that his employer would be vicariously liable if Kirby was found negligent. Harmon and her employer settled out of court with Peeples for $20,000.

motion for new trial because as a matter of law, Kirby's negligent conduct was too remote to be the cause in fact of Peeples's injuries.

### A. Standard of Review

A judgment N.O.V. is proper only if there is no evidence supporting the jury's findings. *See Exxon Corp. v. Quinn*, 726 S.W.2d 17, 19 (Tex.1987). In determining a "no-evidence" point, we examine all the evidence in the light most favorable to the verdict, and indulge every reasonable inference from the evidence in that party's favor. *See Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.1998); *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). If there is some probative evidence supporting the verdict, we must affirm the court's denial of the motion. *See Wal–Mart Stores, Inc. v. Berry*, 833 S.W.2d 587, 590 (Tex.App.—Texarkana 1992, writ denied).

An assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *See Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). We are required to consider all of the evidence in making this determination. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex.), *cert. denied*, —— U.S. ——, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998).

### B. Proximate Cause

In this case, Appellants contend that Kirby's negligence was too attenuated in time and distance from the Peeples–Harmon collision to be the legal cause of Peeples's injuries. Appellants argue that "[i]t is clear that all acts and omissions [committed by] Kirby had run their course and were complete at the time of the accident caused by Harmon." Appellants also argue that Kirby merely created a condition in which the accident occurred and thus conclude that their case is analogous to the situation in *Bell v. Campbell*, 434 S.W.2d 117 (Tex.1968). We disagree on each count.

To proximately cause an injury, an actor need not be the last cause, or the act immediately preceding an injury. *See Texas Power and Light Co. v. Stone*, 84 S.W.2d 738, 740 (Tex.Civ.App.—Eastland 1935, writ ref'd). Moreover, there can be more than one proximate cause of an accident. *See Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex.1992). When a new cause cooperates with the defendant's original negligent act in causing the injury, the original defendant remains a proximate cause of the injury, regardless of whether the new, concurring act was foreseeable. *See Bell*, 434 S.W.2d at 122. Thus, it is no defense that a third person's negligent act intervened to cause the injury to the plaintiff, if the new act cooperates with the still-persisting original negligence of the defendant to bring about the injury. *See Rodriguez v. Moerbe*, 963 S.W.2d 808, 819 (Tex.App.—San Antonio 1998, writ denied).

At some point in the causal chain, however, a defendant's conduct may simply be too attenuated from the plaintiff's injury as a matter of law to constitute legal causation. *See Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex.1995). This is true even though the negligent act was technically the "but for" cause of the plaintiff's injury. *See id.* at 776. "The evidence must go further, and show that such negligence was the proximate, and not the remote, cause of resulting injuries ... [and] justify the conclusion that such injury was the natural and probable result thereof." *Doe v. Boys Clubs of Greater Dallas*, 907 S.W.2d 472, 477 (Tex. 1995). Thus, legal cause is not established if the defendant's conduct did no more than furnish the condition that made the plaintiff's injury possible. *See Allbritton*, 898 S.W.2d at 776.

As the supreme court explained in *Lear Siegler, Inc. v. Perez*:

> In order to be a legal cause of another's harm, it is not enough that the harm would not have occurred had the actor not been negligent.... [T]his is necessary, but is not of itself sufficient. The negligence

must also be a substantial factor in bringing about the plaintiff's harm. The word "substantial" is used to denote the fact that *the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility,* rather than in the so-called "philosophic sense," which includes every one of the great number of events without which any happening would not have occurred. Each of these events is a cause in the so-called "philosophic sense," yet the effect of many of them is so insignificant that no ordinary mind would think of them as causes.

819 S.W.2d 470, 472 (Tex.1991) (emphasis added) (quoting RESTATEMENT [SECOND] OF TORTS § 431, cmt. a (1965)).

Indeed, this case is similar to the situation in *Almaraz v. Burke,* 827 S.W.2d 80 (Tex. App.—Fort Worth 1992, writ denied). In *Burke,* Ramon Almaraz's van collided with Kenneth Hoffman's car on a freeway in downtown Fort Worth. Almaraz continued on, leaving the disabled car sitting sideways on an overhead traffic lane. *See id.* at 81. Approximately ten minutes after the first accident, Rodney Burke hit Hoffman's car with his Bronco. A third car collided with the Bronco.

Burke sued Almaraz, who argued that he was not a proximate cause of Burke's accident because (1) it occurred ten minutes after he (Almaraz) hit Hoffman's car and (2) Burke was a new and intervening cause that relieved Almaraz's original negligence. *Id.* The jury found in favor of Burke. We affirmed, holding that a rational jury could have concluded that by causing Hoffman's car to become disabled on an interstate highway, Almaraz was a cause of the collision between the Hoffman–Burke vehicles. *See id.* In this case, the evidence clearly established that Kirby's negligence and the effects thereof, i.e., the traffic backup, had not come to a rest.

Appellants rely on *Union Pump, Lear Siegler,* and *Bell* as support for their position that Kirby's negligence was too remote to proximately cause Peeples's injuries. But we have no problem distinguishing these and the other cases cited in Appellant's brief. Unlike the situations in *Lear Siegler, Union Pump,* and *Bell,* Kirby's negligence did not simply create a condition that made Peeples's injuries possible or cause Peeples to be in the wrong place at the wrong time. *See Union Pump,* 898 S.W.2d at 775, 777 (chemical company employee who, after a pump fire had been extinguished, slipped on pipe rack that was wet with water or firefighting foam could not recover from pump manufacturer; pump fire did no more than create condition that made injury possible); *Lear Siegler,* 819 S.W.2d at 471–72 (family of deceased highway department worker who, while repairing malfunctioning sign, was killed by driver who had fallen asleep, could not recover from sign manufacturer); *Bell,* 434 S.W.2d at 120, 122 (families of decedents, who were killed by third party while trying to remove from roadway a trailer disabled in an earlier accident, could not recover from drivers involved in original accident).

In contrast with the above cases, the connection between Kirby's act and Peeples's injuries was not too attenuated as a matter of law to constitute legal causation. *See Almaraz,* 827 S.W.2d at 81–82. As a result, we hold that the evidence was legally and factually sufficient for a rational juror to find that Kirby's negligence in missing his exit, blocking traffic, and backing up on the highway proximately caused Peeples's injuries. We overrule Appellants' first and third points.

## III. NEW AND INDEPENDENT CAUSE INSTRUCTION

In their second point, Appellants contend that the trial court erred in overruling their request for an instruction on new and independent cause. Appellate courts review the denial of a requested jury instruction under an abuse of discretion standard. *See Mobil Chem. Co. v. Bell,* 517 S.W.2d 245, 256 (Tex.1974); *James v. Texas Dep't of Human Services,* 836 S.W.2d 236, 245 (Tex. App.—Texarkana 1992, no writ). To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable. *See*

*Goode v. Shoukfeh,* 943 S.W.2d 441, 446 (Tex. 1997); *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

"New and independent cause" is an inferential rebuttal defense that may be submitted to the jury as an instruction but not as a special issue. *See* Tex.R. Civ. P. 277; *Perez v. Weingarten Realty Investors,* 881 S.W.2d 490, 496 (Tex.App.—San Antonio 1994, writ denied). If the evidence in a negligence case raises the issue of new and independent cause, it is reversible error not to include the term in the definition of proximate cause and to define it. *See Young v. Massey,* 128 Tex. 638, 101 S.W.2d 809, 810 (1937). The question of whether the trial court erred in refusing to give the definition turns on whether the evidence in the record raised the issue of new and independent cause. *See id.*

A new and independent cause is some act or omission of a separate and independent agency that destroys the causal connection between the defendant's original negligent act and the occurrence in question. *See id.* However, if an intervening cause was reasonably foreseeable by the defendant in the exercise of ordinary care, it cannot be considered a new and independent cause that will break the chain of causation. *See Knoll v. Neblett,* 966 S.W.2d 622, 634 (Tex.App.—Houston [14 th Dist.] 1998, review denied); *Hall v. Huff,* 957 S.W.2d 90, 98 (Tex.App.—Texarkana 1997, writ denied). The issue of an "intervening cause" as a bar to a defendant's liability is also dependent on whether the defendant's negligence and the forces generated by that negligence have come to a rest. *See Henry v. Houston Lighting & Power Co.,* 934 S.W.2d 748, 754 (Tex.App.—Houston [1 st Dist.] 1996, writ denied).

As noted above, at the time of Peeples's injuries, Kirby's negligence and the effects thereof were still in motion. Furthermore, this is precisely the type of intervening act (i.e., a wreck involving a third party) that Kirby, in the exercise of ordinary care, could

reasonably foresee would result from missing his exit, blocking traffic, and backing up his eighteen wheeler in a construction zone. Because it was reasonably foreseeable, as a matter of law Harmon's act could not be a new and independent cause. We overrule point two.

## IV. REMITTITUR

In a single cross-point, Peeples challenges the trial court's decision to grant a remittitur. At the hearing on Appellant's motion for remittitur, Appellants asked the trial court to remit $20,000 of the $108,409 damage award, contending that the jury's award shocked the conscience and was manifestly unjust. Instead, the trial court ordered a remittitur of $37,500, consisting of $25,000 for physical pain and mental anguish, and $12,500 for physical impairment.[2] After Appellants filed their notice of appeal, Peeples perfected his appeal on this issue. *See* Tex.R.App. P. 26.1(d), 46.2.

We review remittiturs under a factual sufficiency standard. *See Larson v. Cactus Util. Co.,* 730 S.W.2d 640, 641 (Tex. 1987). In other words, we may uphold a trial court's remittitur only when the evidence is factually insufficient to support the jury's verdict. *See id.* In conducting this review, we must consider and weigh all of the evidence and should set aside the jury's verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *In Re King's Estate,* 244 S.W.2d at 661.

Because personal injury damages are unliquidated and incapable of measurement by any certain standard, the jury has broad discretion in fixing the amount of the award. *See Kansas City Southern Ry. Co. v. Catanese,* 778 S.W.2d 114, 119 (Tex.App.—Texarkana 1989, writ denied). "[I]t is particularly within the province of the jury to resolve matters of elements of past and future physical pain, mental anguish, and physical impairment, and determine the amounts

---

2. The trial court originally ordered a remittitur of $37,500 for physical pain and mental anguish (in addition to the $12,500 remittitur for physical impairment). Upon Peeples's motion, however, the court reconsidered and reduced the amount to $25,000.

attributable thereto." *Marshall v. Superior Heat Treating Co.*, 826 S.W.2d 197, 200 (Tex. App.—Fort Worth 1992, no writ). Thus, as long as there exists sufficient probative evidence to support the jury's verdict, neither the reviewing court nor the trial court is entitled to substitute its judgment for that of the jury. *See Larson*, 730 S.W.2d at 641.

In this case, Appellants contend that the evidence is insufficient to support the jury's award for physical pain and mental anguish and physical impairment because (1) there is no evidence that Peeples suffered any injury, (2) Peeples did not seek medical treatment until May 1995, more than eight months after the accident, (3) Peeples never took any pain medication, (4) Peeples's doctor had not seen him in more than a year before the trial, and (5) Peeples testified that since the accident, he "can still do just about anything." We disagree.

■ At trial, Peeples testified that the morning after the wreck, he went to Bossier Medical Center for an examination and told the staff that he felt like he'd been beaten with a chain. However, Peeples believed the soreness was temporary and he would be able to return to work in a few days. Instead, the pain got worse. Peeples did not seek medical attention at that time because he does not like doctors. Likewise, he did not resort to pain medication because he "just [doesn't] believe in it."

Eventually the pain became so bad that Peeples could barely walk. When he did, it felt like an ice pick was being rammed into his back and twisted. Sometimes he would wake up at night screaming from the pain. At that point, Peeples sought chiropractic care from Dr. Ken Mansfield, who treated Peeples on nine occasions from May 1995 to February 1996. Peeples testified he was no longer being treated by Mansfield because he could not afford to miss work or incur any more debt until he had a way to pay for it.

Mansfield testified about Peeples's neck and back injuries. He said Peeples had a chronic moderate cervical sprain acceleration injury (commonly referred to as "whiplash") and a chronic moderate lumbar sprain in his lower back, an injury that is "quite painful." He also said Peeples's injuries were consistent with a 45–mile–per–hour rear-end collision, and he believed Peeples's injuries were caused by such a collision. Finally, Mansfield testified that Peeples will likely have chronic back pain as a result of his injuries and driving a truck is not a good occupation for Peeples as a result of his injuries. This evidence, coupled with Peeples's testimony, is factually sufficient to support a $75,000 award for Peeples's physical pain and mental suffering.

■ The jury also heard sufficient evidence to support an award of $25,000 in damages for physical impairment. Peeples testified that at the time of the collision, he was in perfect health. Although Peeples said that he could "still do just about anything," he qualified this statement, saying, "The only difference is, before I could do anything without pain and without any limitations.... Now, after the accident, what I do may not be as quick, due to the pain, and I may end up suffering for it the next day." Peeples also said that he could no longer participate in motocross or cross-country motorcycle racing, he could not work on cars like he did before he was injured, and his back hurt whenever he did anything strenuous. In addition, although Peeples is a trained electrician, that work is now too strenuous for him.

Because the evidence was factually sufficient to support the damage awards for physical pain and mental anguish and physical impairment, the trial court erred in ordering a remittitur. We sustain Peeples's point.

## V. CONCLUSION

When we sustain a remitting party's contention that remittitur should not have been required, we must render the judgment that the trial court should have rendered. *See* TEX.R.APP. P. 46.2. Accordingly, we reverse the part of the trial court's judgment ordering a remittitur of $25,000 for physical pain and mental anguish and $12,500 for physical impairment. We render judgment in favor of Peeples against Appellants on the jury's original verdict as follows:

- $75,000 in damages for physical pain and mental anguish,
- $7,200 for loss of earning capacity,

- $25,000 for physical impairment, and
- $1,209 for medical care in the past.

We affirm the remainder of the trial court's judgment. Thus, Peeples's total recovery is $88,409 ($108,409 minus Appellants' $20,000 credit for Peeples's out-of-court settlement with Harmon and her employer). We remand the cause to the trial court for recalculation of interest.