SOUTHWEST TEXAS COORS, INC. and
Javier Hernandez, Appellants,

v.

Mario L. MORALES and Irma Leticia
Morales, Appellees.

No. 04–96–00530–CV.

Court of Appeals of Texas,
San Antonio.

July 9, 1997.

Michael J. Bagley, Law Offices of Michael J. Bagley, Eagle Pass, Rand J. Riklin, John E. Clark, Goode, Casseb & Jones, P.C., San Antonio, for Appellants.

Jose J. Ruiz, Marco A. Salinas, Ruiz & Herring, Eagle Pass, Timothy Patton, Pozza & Patton, San Antonio, for Appellees.

Before HARDBERGER, C.J., and STONE and GREEN, JJ.

## OPINION

STONE, Justice.

This appeal raises questions about the proper standard of review applicable to expert medical testimony when the evidence suggests the claimant suffered an aggravation of a pre-existing medical condition. Southwest Texas Coors, Inc. and Javier Hernandez (hereinafter collectively "Coors") appeal from a jury verdict awarding $239,000 to Mario Morales and $15,000 to Irma Morales for damages Mario sustained in a car accident. This appeal concerns only Mario's award. Because we find the lay and expert evidence factually sufficient to support the verdict, we affirm.

### Factual & Procedural Background

On April 7, 1993, Mario was stopped at an intersection in Eagle Pass, Texas waiting to make a left-hand turn. Javier Hernandez, driving a Coors van during the scope of his employment, struck the rear of Mario's pick-up truck. The physical evidence at the accident scene indicated that Hernandez did not apply his brakes prior to impact; the front

bumper of the Coors' van was bent into its tires; Mario's truck bed was driven into the cab causing damage to the cab and frame of the truck; and a hitch ball on Mario's 10-inch steel alloy bumper was knocked off and never found. The force of the impact threw Mario into his steering wheel causing temporary loss of breath. Mario was placed on a stretcher and transported to the hospital in an ambulance.

Mario brought general negligence claims against Coors and the case was tried to a jury. The evidence indicated that Mario sustained a whiplash-like injury in the accident. Additionally, Mario alleged that a pre-existing congenital back condition, spondylolisthesis, was aggravated by the trauma. In one broad-form damage question the jury was asked to determine an amount to compensate Mario for any injuries that resulted from the collision. As noted, the jury awarded $239,000 in damages to Mario. The trial court entered judgment on the verdict. Coors' motion for new trial was overruled by operation of law.

## Factual Insufficiency

■ Coors complains that the evidence is factually insufficient to support the $239,000 award. Our review of a factual sufficiency challenge is guided by well established rules. The reviewing court considers and weighs all the evidence, and sets aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). The reviewing court does not pass on the credibility of the witnesses or the weight given their testimony, and it does not interfere with the jury's resolution of conflicts of evidence. *Lawson–Avila Constr., Inc. v. Stoutamire,* 791 S.W.2d 584, 594 (Tex. App.—San Antonio 1990, writ denied). The jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony, *Novosad v. Mid–Century Ins. Co.,* 881 S.W.2d 546, 548 (Tex.App.—San Antonio 1994, no writ), and is free to believe one witness and disregard others. *Peterson v. Reyna,* 908 S.W.2d 472, 476 (Tex.App.—San Antonio 1995, *aff'd. as modified on other grounds,* 920 S.W.2d 288 (Tex.1996). In ful-

filling our duty, we are mindful that we do not sit as the thirteenth juror and we should exercise great restraint in reversing a jury verdict on sufficiency of the evidence. *See Carr v. Jaffe Aircraft Corp.,* 884 S.W.2d 797, 799, 802–03 (Tex.App.—San Antonio 1994, no writ).

Coors contends that these standards of review, which defer to the jury's right to resolve conflicts in the evidence and to accept or reject any part of witness testimony, are inapplicable to the instant case. Rather, Coors claims the sole issue before the jury was whether Mario's pre-existing back condition was aggravated by the accident, and that only expert testimony could be considered in resolving that issue. *See T.E.I.A. v. Espinosa,* 367 S.W.2d 667, 669 (Tex.1963) (holding that lay testimony could not support finding that injury to left eye affected entire body when medical experts found no evidence connecting injury with other disabilities); *Houston General Ins. Co. v. Pegues,* 514 S.W.2d 492, 495 (Tex.Civ.App.—Texarkana 1974, writ ref'd n.r.e.) (noting that aggravation of disease is subject in which only expert testimony has probative value). Coors further claims that Mario failed to present probative medical evidence establishing aggravation of his pre-existing medical condition, and that consequently, the award of damages is manifestly unjust. We disagree with Coors' assessment of the posture of this case and how it was pled and tried to the jury.

■ The pleadings upon which Mario proceeded to trial, the evidence presented, and the jury charge, all demonstrate that the case was plead and tried in terms of general negligence and not solely as an aggravation issue. The record establishes that following the accident, Mario was treated by his physician of several years, Dr. Gonzales–Rios. Initially Dr. Rios treated Mario for strained muscles and ligaments in his neck and back and prescribed medication for Mario's severe pain. In addition to his initial diagnosis of whiplash, Dr. Rios believed that the accident aggravated Mario's pre-existing back condition and caused spinal instability. Dr. Rios' determination that the accident aggravated Mario's condition was based upon a 1995 MRI film indicating vertebral displacement,

Mario's complaints of persistent pain, and multiple physical examinations from April 1993 through March 1995, in which Mario demonstrated physical impairment such as lumbar dysfunction and muscle spasms. Dr. Rios recommended lumbar surgery and a fusion to correct Mario's spinal instability.

In addition to Dr. Rios, three other doctors testified regarding whether Mario's condition was aggravated by the Coors accident. All three doctors compared pre-accident and post-accident x-ray images, and concluded that this objective evidence did not indicate a change in Mario's spinal condition. The doctors did agree, however, that Mario sustained a whiplash-like injury in the accident. The jury also learned that of these three doctors, only one, Dr. Garza–Vale, had met with and examined Mario. Further, the jury learned that Dr. Murrary, a radiologist who testified for the defense, was a long-time personal friend of Coors' counsel. The jury was free to consider these facts in assessing the credibility of these witnesses and the weight to be given to their testimony. Additionally, Dr. Murrary and Dr. Hernandez stated that a final diagnosis should not be based solely on x-ray films. The jury could infer from those statements that Dr. Rios, as Mario's treating physician, was in a better position to determine whether Mario's condition was aggravated by the accident.

Coors argues, however, that Dr. Rios' testimony does not support the damage award because Dr. Rios did not base his opinion on a comparison of pre-accident and post-accident x-rays, despite his agreement that x-ray films were "the study of choice" to determine spondylolisthesis and that a comparison of pre-accident and post-accident x-rays would definitively show an aggravation. We do not agree with Coors' interpretation of Dr. Rios' testimony. On cross-examination Dr. Rios did state that x-rays were the "study of choice," but he did not state, contrary to Coors' suggestion, that x-rays would be the mandatory or exclusive way to determine aggravation. Even Coors' medical experts, who emphasized the value of comparing x-rays, did not state that comparative x-rays were the only source of information regarding Mario's injuries. As previously noted, Drs. Murrary and Hernandez testified that Mario's condition was not aggravated; but they agreed that a final opinion on the issue of aggravation should not be based solely on x-ray films. Thus we are left with a situation in which some medical experts performed an arguably more objective review of Mario's spinal condition than his own treating physician did. Nonetheless, these are issues of weight and credibility that the jury is entitled to determine. This court will not interfere with the jury's resolution of conflicts in the evidence, *Stoutamire*, 791 S.W.2d at 594, and accordingly, we find that there is sufficient evidence upon which the jury could determine the nature of Mario's injuries.

### Excessive Damages

Coors next contends that the trial court erred in refusing to suggest a remittitur because Mario's award of damages is excessive. Specifically, Coors argues that absent a showing of an aggravation of Mario's condition, there is no justification for an award of damages based on the consequences of aggravation, and thus the award is excessive and manifestly unjust. As previously discussed, this argument is incorrectly premised upon the assumption that Mario's case was limited to a damages claim for aggravation of his back condition. The case was neither plead solely as an aggravation claim, nor was it submitted to the jury as an aggravation claim.

A claim that damages are excessive is reviewed under a factual sufficiency analysis. *Pope v. Moore*, 711 S.W.2d 622, 624 (Tex.1986). In the instant case, the broad-form question encompassed four elements: physical pain and mental anguish, loss of earning capacity, physical impairment, and medical care. We examine all the evidence to determine whether the award is supported by sufficient evidence and order a remittitur only if the award is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Id.* In assessing personal injury damages, the jury has wide latitude in determining the amount of the award. *Baptist Memorial Hosp. Sys. v. Smith*, 822 S.W.2d 67, 78 (Tex.App.—San Antonio 1991, writ denied). Matters of pain

and suffering, which are necessarily speculative and not subject to precise mathematical calculations, are particularly within the province of the jury to resolve and to determine appropriate amounts. *Lee v. Huntsville Livestock Servs., Inc.,* 934 S.W.2d 158, 160 (Tex.App.—Houston [14th Dist.] 1996, no writ); *Mercy Hosp. of Laredo v. Rios,* 776 S.W.2d 626, 636 (Tex.App.—San Antonio 1989, writ denied). In determining future medical expenses, the jury is granted wide discretion, and may consider the nature of the injury, the medical care rendered in the past, and the condition of the injured party at the time of the trial. *K Mart Corp. v. Rhyne,* 932 S.W.2d 140, 144 (Tex.App.—Texarkana 1996, no writ); *Beverly Enter. of Texas, Inc. v. Leath,* 829 S.W.2d 382, 386 (Tex.App.—Waco 1992, no writ). Expert testimony on damages is only evidentiary and not binding upon the trier of fact. *Novosad,* 881 S.W.2d at 550.

The jury heard evidence that Mario sustained a whiplash-like injury and aggravated his pre-existing back condition. Mario's past medical bills totaling approximately $5000 were introduced into evidence. Dr. Rios testified that Mario's condition continues to decline and that lumbar surgery is the only method to correct his spondylolisthesis and lumbar instability. The cost of the surgery was estimated at $20,000. Follow-up care and physical therapy would be necessary, although no approximate costs for the additional treatment were offered.

Lay testimony also revealed Mario's physical pain, mental anguish, and physical impairment. Mario testified that since the accident he is in constant pain and unable to perform tasks at home or required of him at work. Twenty-nine years old at the time of the accident, Mario was employed at Texas Housing Mobile Dealership where he delivered and assembled mobile homes. Following the April accident, Mario returned to work in December. Although his return was not authorized by Dr. Rios, Mario stated that he began working to earn money for the holiday season. Upon his return to Texas Housing, Mario was relegated to performing light duties due to his inability to perform the physical tasks necessary for assembling homes.

Mario has worked his entire adult life. He testified that he began working at age sixteen at a grocery store where he was employed periodically for seven years. After sustaining work-related injuries in 1986 and 1989, he returned to work. When he was not regularly employed, he harvested crops as a migrant farm worker. Mario performed this field work for approximately sixteen years.

Mario testified that since the accident he is unable to enjoy leisure activities, participate in sports, or help his children with their 4–H projects. He is no longer able to pick up his son or put him on his shoulders. Moreover, he described himself as irritable and frustrated since the accident which has caused family problems. Irma, Mario's wife, also testified that Mario's mental and physical condition have declined since the accident. He is no longer able to help with household chores, repairs, and tending to the children. Irma attributes Mario's bad moods to the accident and explained that they were "a happy family" before the accident. Bertha Franco and Miguel Franco, Mario's relatives and co-workers, also testified about Mario's inability to perform physical labor and his mood change since the accident.

From this record the jury could properly determine that Mario, a hardworking man who had worked his entire adult life, lived with persistent pain which prevented him from both working and enjoying leisure activities with family and friends. The testimony of Mario, his wife, and his co-workers provided direct evidence of the nature, duration, and severity of Mario's anguish, and established a substantial disruption in Mario's daily routine to the extent that he was no longer able to engage in the daily activities that had previously allowed him to be an active part of a "happy family." *See Saenz v. Fidelity & Guar. Ins. Underwriters,* 925 S.W.2d 607, 614 (Tex.1996) (holding that mental anguish damages can be upheld upon direct evidence of the nature, duration, or severity of the claimant's anguish establishing a disruption in the claimant's daily routine).

The jury could also infer that his inactivity and pain were sources of frustration, humiliation, and family discord. *See Transit Management Co. of Laredo v. Sanchez,* 886 S.W.2d 823, 826 (Tex.App.—San Antonio 1994, no writ) (stating that mental anguish includes grief, severe disappointment, indignation, wounded pride, shame, despair, or public humiliation). Further, the record supports the determination that Mario's declining back condition and resulting constant pain could not be corrected without expensive surgery. The evidence presented supports a finding that an award of $239,000 would fairly and reasonably compensate Mario for the physical pain and mental anguish, loss of earning capacity, physical impairment, and medical care expenses incurred by Mario as a result of this accident. We cannot say that the jury's award is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pope,* 711 S.W.2d at 624. Points of error numbers one and two are overruled.

### Prejudicial Voir Dire Remark

In its third point of error Coors argues that the trial court erred in overruling its motion for new trial and motion for mistrial because during voir dire a prejudicial response was intentionally elicited from a prospective juror.

During Coors' portion of voir dire, Officer Orlando Escareno stated that he could not be fair to the parties after reading the accident report prepared by one of his subordinates. Officer Escareno restated this belief during the plaintiffs' portion of voir dire. Plaintiffs' counsel then asked:

Q: You could not be fair to ***them?***

A: No, sir.

Coors claims that plaintiffs' counsel pointed at its attorneys during this exchange solely for the purpose of revealing in which direction Officer Escareno's bias ran.

■ The record is silent regarding the alleged hand gestures of counsel. Absent the indication that indeed Mario's counsel pointed directly at Coors' attorneys, there is nothing to suggest that the term "them" does not refer to both parties. Upon reviewing the statement in context, we do not find the question was prejudicial or that it was asked to elicit a prejudicial response. Accordingly, the cases upon which Coors relies for the proposition that harm is presumed and reversal is required when counsel deliberately injects prejudice into a case are inopposite to the instant case. Point of error number three is overruled.

The judgment of the trial court is affirmed.

Concurring opinion by GREEN, J.

GREEN, Justice, concurring.

I concur in the result reached by the majority, but I respectfully disagree with the discussion of mental anguish damages presented in the majority opinion. It is unnecessary to the decision in the case, and worse, it perpetuates an outmoded and discounted view of the law of mental anguish damages.

The supreme court has recently sought to clarify the standard to be met when seeking the recovery of mental anguish damages. *See generally Parkway Co. v. Woodruff,* 901 S.W.2d 434 (Tex.1995) and *Saenz v. Fidelity & Guar. Ins. Underwriters,* 925 S.W.2d 607 (Tex.1996). Among several reasons for addressing the issue was the "convoluted and complex" history of mental anguish damages that allowed a potential for double recoveries. *See Parkway,* 901 S.W.2d at 442–43. The court held that plaintiffs cannot be awarded mental anguish damages without either "direct evidence of the nature, duration, or severity of their mental anguish, thus establishing a substantial disruption in the plaintiffs' daily routine", or other evidence of " 'a high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger.' " *Id.* at 444.

The evidence shows that Mario is in constant pain and is unable to perform tasks at home or at work; he is unable to enjoy leisure activities, participate in sports, or help his children with their 4–H projects; he is no longer able to pick up his son; and he is irritable and frustrated, resulting in family problems. The majority concludes this evidence is adequate to support a recovery for mental anguish damages, but the effect of that holding gives Mario a double recovery.

Damages for physical and mental injuries are separate and distinct. Quite obviously, an injury that seriously impairs the physical activities of a person can also cause a "substantial disruption in the [person's] daily routine", but that does not automatically entitle the injured party to mental anguish damages. Mario's inability to perform tasks, participate in sports, or pick up his child is a consequence of his physical pain and impairment resulting from injury. He is entitled to recover damages for these physical injuries, and presumably they are reflected in the jury award. The evidence of physical injury, however, cannot also be the basis for a mental anguish recovery; otherwise, there is a potential for a double recovery. And it is precisely this result that was sought to be avoided by the supreme court.

The only other evidence purporting to support Mario's mental anguish damages is that of his irritability and frustration, which caused family problems. Although physical injuries may lead to emotional distress, *Parkway* and *Saenz* make it clear that a recovery for mental injuries requires more than a showing of the usual and ordinary emotional consequences of physical injury. The fact that Mario was understandably irritable and frustrated because of his injury does not establish a degree of distress that was more than mere worry, anxiety, vexation or anger and does not rise to the level of compensable mental anguish. *See Saenz,* 925 S.W.2d at 614 ("Plaintiffs proved worry, anxiety, vexation and anger, but failed to prove that their distress involved more than these emotions.")

I also disagree with the majority's suggestion that mental anguish damages can be inferred from mere inactivity and pain. The authority cited for this proposition is *Transit Mgt. Co. of Laredo v. Sanchez,* 886 S.W.2d 823 (Tex.App.—San Antonio 1994, no writ); however, *Sanchez* pre-dates *Parkway* and *Saenz,* and to the extent it may support such a holding, it has been implicitly overruled.

Although, in my opinion, the appellees failed to prove mental anguish damages, there is at least some evidence in the record to support the other claimed damages. And while there is certainly room for reasonable minds to differ over whether this record supports a broad form jury verdict in the amount of $239,000, I cannot conclude that the verdict is so against the great weight and preponderance of the evidence that it is manifestly unjust. Therefore, I concur in the result.