**GREENPOINT CREDIT
CORPORATION,
Appellant,**

v.

**Ninfa PEREZ, Appellee.**

**No. 04–01–00188–CV.**

Court of Appeals of Texas,
San Antonio.

Jan. 16, 2002.

Rehearing Overruled March 4, 2002.

B. Bruce Johnson, Bob Frisch, Law Offices of B. Bruce Johnson, Dallas, Mark R. Paisley, Adami, McNeill, Paisley & Appel, P.C., Alice, Sharon E. Callaway, Nissa M. Sanders, Thomas H. Crofts, Jr., Crofts & Callaway, P.C., San Antonio, for Appellant.

Douglas A. Allison, Law Office of Douglas A. Allison, Corpus Christi, Timothy Patton, Timothy Patton, P.C., San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice,[1] and PAUL W. GREEN, Justice.

Opinion by PHIL HARDBERGER, Chief Justice.

This unfair debt collections act case involves an illegal threat by a finance compa-ny to put an elderly woman in jail for a debt that she did not owe, on a mobile home she did not own. A jury awarded substantial actual and punitive damages. The case comes to this court principally on the excessiveness of actual damages, and the absence of the predicate requirements necessary to impose damages against the corporation, as opposed to the overzealous employee.

The case began when an employee of the finance company, GreenPoint Credit Corp. ("GreenPoint"), made a demanding phone call to Ninfa Perez ("Mrs.Perez"). The substance of the phone call was that Mrs. Perez was woefully behind on her mobile home payments, and that she must pay up or face the consequences. The call was not only disturbing to Mrs. Perez, it was also mystifying. She owned no mobile home and had no idea what the represen-tative was talking about. Her attempts to explain this to the representative fell on deaf ears. He gave her the company's phone number and told her to pay the bill. Mrs. Perez was at a substantial disadvan-tage in this and subsequent dealings with GreenPoint. She was 72 years old, did not speak or understand English, and had a medical history of anxiety disorders. She had lived in the same house all her life, and her sole source of income was a mod-est monthly Social Security check. She had a daughter, Zulema Torres ("Torres"), who lived across the street and cared for her mother. Mrs. Perez did not own a mobile home, and there was no evidence she had ever owned one.

GreenPoint's records, however, indicated Mrs. Perez was the buyer and borrower on a mobile home in which GreenPoint pro-vided financing. Much later it became clear what the problem was. It turned out that

Mrs. Perez's granddaughter, Melissa Perez, negotiated the purchase of the mobile home by fraudulently providing the seller with her grandmother's financial information and forging her signature. This was unknown to either party at the time, and is not critical to the appeal. All parties now agree that Mrs. Perez did not purchase the mobile home.

The day after Mrs. Perez received the initial mystifying call, the GreenPoint representative again telephoned Mrs. Perez and demanded payment on the mobile home. Mrs. Perez again denied having purchased the mobile home and informed the representative that she had not sent in any payments. Mrs. Perez testified that the representative then became rude and began using obscene language. She said that the representative then told her that if she did not send in a payment that day, a sheriff's deputy was going to come and put her in jail that afternoon, at 2 p.m. This about did Mrs. Perez in. When Torres went to see her mother later that day, she found her distraught and crying. Mrs. Perez asked Torres to take her to see the Duval County Sheriff, Santiago Barrera, Jr. ("Barrera"), because she was going to be put in jail, and apparently was ready to turn herself in. Torres then drove her mother to the Sheriff's office. Mrs. Perez told Barrera about the call from Green-Point and their threat to put her in jail. Barrera testified that Mrs. Perez was crying and extremely upset. He tried to calm her down and assured her that he was not going to put her in jail. The Sheriff then called GreenPoint himself and told them that they had the wrong person. He informed GreenPoint that Mrs. Perez owned no mobile home and that Mrs. Perez's signature did not match the one on the document. The Sheriff's words also fell on deaf ears. GreenPoint's representative continued to insist that Mrs. Perez owed the money.

Approximately two weeks later, Green-Point sent a field representative to Mrs. Perez's home to investigate the case. The representative completed a Field Contact Form in which he stated that Mrs. Perez continued to deny having signed any contract and that Mrs. Perez provided him with an ID and a social security card. · The representative also obtained a handwritten affidavit from Mrs. Perez, signed and notarized, in which she swore that she had never signed any documents for the purchase of a mobile home, and never consented for anyone else to provide her personal information for such. ˙ Despite the evidence that they had the wrong person, GreenPoint sued anyway.

GreenPoint filed suit against Mrs. Perez and her granddaughter, Melissa Perez, asserting causes of action for conversion, judicial foreclosure, payment of indebtedness, and attorney's fees. Melissa Perez never answered, and the trial court rendered a default judgment against her. Mrs. Perez generally denied GreenPoint's allegations and filed a counterclaim against GreenPoint. She asserted causes of action for violations of the Texas Debt Collection Act and the Deceptive Trade Practices Act, intentional infliction of emotional distress, and negligence. She also alleged that GreenPoint acted with malice entitling her to exemplary damages.

The case was bifurcated and tried to a jury. GreenPoint eventually abandoned its claims against Mrs. Perez, and the case was submitted to the jury on Mrs. Perez's counterclaims under the Debt Collection Act. After the first phase of the trial, the jury found the following: (1) GreenPoint's unreasonable collection efforts were a producing cause of injury to Mrs. Perez; (2) GreenPoint engaged in such unreasonable collection efforts knowingly and intentionally; (3) Mrs. Perez sustained $3,000,000 in

damages in the past and would sustain $2,000,000 in damages in the future; (4) the injury to Mrs. Perez resulted from malice by GreenPoint; (5) a vice-principal of GreenPoint intentionally or knowingly caused serious mental deficiency, impairment, or injury to an elderly person; and (6) the actions of GreenPoint did not result from a bona fide error that occurred notwithstanding the use of reasonable procedures adopted to avoid such error. After the second phase of the trial, the jury assessed $10,000,000 in exemplary damages against GreenPoint for the injuries caused to Perez. The trial court rendered judgment on the verdict over GreenPoint's motion for judgment notwithstanding the verdict. GreenPoint filed a motion for new trial based on juror disqualification / misconduct and improper arguments of opposing counsel. The trial court held an evidentiary hearing on the motion. The trial court never ruled on the motion, and it was overruled by operation of law.

GreenPoint raises four issues on appeal, arguing: (1) the jury's award of actual damages is excessive; (2) the evidence is legally and factually insufficient to support the jury's award of exemplary damages; (3) the trial court erred in not granting a new trial based on juror disqualification and/or juror misconduct; and (4) the trial court erred in not granting a new trial based on improper and incurable comments made by Perez's counsel regarding GreenPoint's net worth. We affirm in part and reverse in part the trial court's judgment.

### DISCUSSION

### A. Actual Damages

■ "A claim that damages are excessive is reviewed under a factual sufficiency analysis." *Southwest Tex. Coors, Inc. v. Morales*, 948 S.W.2d 948, 951 (Tex.App.-San Antonio 1997, no writ). "We examine all the evidence to determine whether the award is supported by sufficient evidence and order remittitur only if the award is so against the great weight and preponderance of the evidence as to be manifestly unjust." *Id.* If sufficient probative evidence exists supporting the jury's verdict, the reviewing court is not entitled to substitute its judgment for that of the jury. *J. Wigglesworth Co. v. Peeples*, 985 S.W.2d 659, 666 (Tex.App.-Fort Worth 1999, pet. denied). It is particularly within the province of the jury to resolve matters which are necessarily speculative and not subject to precise mathematical calculations such as physical pain and mental anguish. *Morales*, 948 S.W.2d at 952. "Because personal injury damages are unliquidated and incapable of measurement by any certain standard, the jury has broad discretion in fixing the amount of the award." *Peeples*, 985 S.W.2d at 665.

■ "When a damage issue is submitted in broad form, ascertaining the amount the jury awarded for each element of damages is difficult, if not impossible." *Wal-Mart Stores, Inc. v. Garcia* 30 S.W.3d 19, 24 (Tex.App.-San Antonio 2000, no pet.). "An appellant who seeks to challenge a multi-element damage award on appeal must address each element and show the evidence is insufficient to support the entire award." *Id.* "If there is just one element that is supported by the evidence, the damages award will be affirmed if it is supported by the evidence." *Greater Houston Trans. Co. v. Zrubeck*, 850 S.W.2d 579, 589 (Tex.App.-Corpus Christi 1993, writ denied).

■ GreenPoint challenges the compensatory damages as being excessive, with no or insufficient evidence to support them. The compensatory damage issue was asked in the broad form, with the elements of physical pain, mental anguish, medical

care and disfigurement listed. The only separation of the damages was as to past and future. The jury awarded $3,000,000 for past damages and $2,000,000 for future damages.

As any element submitted to the jury could support the verdict if there was sufficient evidence underpinning it, the appellant's burden of overturning the verdict has been termed "extremely difficult." *See id.* The evidence supporting the damages, and their reasonable inferences, are as follows:

1. This was an extraordinarily traumatic event for Mrs. Perez. Handicapped by advancing age, a demonstrated history of anxiety and nervousness, inability to understand the language, culturally insulated, and uneducated, she had few protection mechanisms available to counter the unexpected threats.

2. The threat of being put in jail is calculated to put fear and anxiety into every citizen's heart. It is the very tool used by our justice system to control bad behavior in our society. Even a hardened criminal may think twice before doing something that will cause him to be locked away from society. If a criminal may be frightened by jail, how much more mental and physical anguish would be suffered by a woman in the position of Mrs. Perez? Compound this with the uncontradicted testimony that she did not even understand what fault she had committed. Mrs. Perez found herself in a truly kafkaesque world, where her reputation and peaceful old age were in immediate jeopardy.

3. The evidence showed that Mrs. Perez was so distraught that she sought out Sheriff Barrera, who testified she was crying and extremely upset. An old woman, with a good reputation, might well prefer a voluntary surrender to a peace officer in preference to being arrested in her own neighborhood, with the attendant disgrace to herself and her family that also lives in the neighborhood.

4. Physical evidence of Mrs. Perez's injuries were also before the jury. Graphic photographs of eruptions of her skin and disfiguring, angry running sores were evidence of the turmoil within. There was also evidence of heart palpitations, shortness of breath, nausea, sleeplessness, panic attacks, difficulty in concentrating, irritability, reclusiveness and elevated blood pressure which caused the doctor to prescribe various medications.

5. Her physician, Dr. Reynolds, said that these medical problems resulted from her "problems and hassles" with GreenPoint.

6. As the problems were still continuing at the time of the trial, the jury could have reasonably inferred that they would extend into the future.

Dr. Reynold's testified that he treated Mrs. Perez for a number of ailments including the shingles and a stress related psychological condition. He testified that both her physical and emotional problems were caused by stress resulting from Mrs. Perez's problems with GreenPoint. In addition, he corroborated Mrs. Perez's testimony that the sores and blisters on her body were extremely painful. Through an interpreter, Mrs. Perez testified as to the painful sores on her body, her embarrassment, anxiety, and emotional pain resulting from GreenPoint's threat to put her in jail. Torres, Mrs. Perez's daughter, also testified about her mother's mental anguish. She testified that Mrs. Perez now has trouble sleeping at night. On several occasions, Torres has had to spend the night with her mother. She testified that she never had to do this before the threatening call from GreenPoint. Torres also testified that her mother is reluctant to

leave the house and is embarrassed to be seen by her neighbors.

The evidence regarding damages is not so against the great weight and preponderance of the evidence to be manifestly unjust. *See Morales,* 948 S.W.2d at 951. Enough probative evidence exists supporting the jury's award that we will not substitute our judgment for that of the jury. *See Peeples,* 985 S.W.2d at 666. It is impossible to put an exact dollar amount on the amount of damages GreenPoint's threat caused Mrs. Perez. As such, it was within the province of the jury to resolve this matter. *See Morales,* 948 S.W.2d at 952. The jury had the broad discretion to determine the proper amount of compensation. *See Peeples,* 985 S.W.2d at 665. Because we find there is evidence to support the jury's damage award, we overrule GreenPoint's first point of error. *See Zrubeck,* 850 S.W.2d at 589.

### B. Exemplary Damages

As with actual damages, an appellate court may reverse an exemplary damage award only if the evidence supporting the award is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Lubbock County v. Strube,* 953 S.W.2d 847, 860 (Tex.App.-Austin 1997, pet. denied). An award of exemplary damages is governed by Chapter 41 of the Texas Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM.CODE ANN. § 41.002(a) (Vernon 1997). Accordingly, a claimant seeking exemplary damages must prove by clear and convincing evidence that the harm from which the claimant seeks exemplary damages resulted from fraud or malice on the part of the defendant. *Id.* § 41.003(a). The Chapter provides for a bifurcated trial upon the motion of a defendant. *Id.* § 41.0009(a).

With respect to a corporation, exemplary damages "are warranted only when the act is that of the corporation rather than the act of its 'ordinary servants or agents.'" *Hammerly Oaks, Inc. v. Edwards,* 958 S.W.2d 387, 391 (Tex. 1997). "Thus, a corporation's liability for punitive damages is placed on very different grounds than respondeat superior." *Id.* Exemplary damages can properly be awarded against a corporation because of an act by an agent only if the court finds one of the following: (1) the principal authorized the doing and the manner of the act; (2) the agent was unfit and the principal was reckless in employing him; (3) the agent was employed in a managerial capacity and was acting in the scope of employment; or (4) the employer or a manager of the employer ratified or approved the act. *Id.*

GreenPoint asserts that Mrs. Perez failed to present evidence demonstrating that the conduct complained of was attributable to the corporation. Mrs. Perez contends that the evidence supports the jury's award of exemplary damages. She argues that because a violation of the Texas Debt Collection Act is also actionable as a DTPA violation, the jury's award is proper under the DTPA's provision for discretionary trebling of actual damages.

Mrs. Perez presented no evidence with respect to any of the four bases for imposing exemplary damages against a corporation. The record contains no evidence that GreenPoint authorized the representative who called Mrs. Perez to threaten her with jail. Mrs. Perez did not present any evidence that the representative was unfit and that GreenPoint was reckless in employing the representative. No evidence exists that GreenPoint's representative was employed in a managerial capacity. Finally, Mrs. Perez presented no evidence that GreenPoint ratified or approved the representative's threat of jail. The only evidence with respect to any of these fac-

tors was presented by GreenPoint. Kelly Sanchez testified on behalf of GreenPoint and stated that company policy forbids threatening a person with jail, and that doing so would be grounds for immediate termination of that employee. As a result, exemplary damages were not warranted against GreenPoint because the wrongful act was that of its agent and not the corporation itself. *See id.*

Mrs. Perez's argument that the exemplary damage award is proper as additional damages under the DTPA lacks merit. Although a violation of the Texas Debt Collection Act is a deceptive trade practice actionable under the DTPA, neither the evidence presented at trial nor the two jury charges indicate that Mrs. Perez sought recovery under that statute. *See* TEX. FIN.CODE ANN. § 392.404(a). Furthermore, it is clear from the jury charge at both stages of the trial that the jury was to consider exemplary damages, not additional damages under the DTPA. Neither charge includes any questions relating to additional damages under the DTPA. We sustain GreenPoint's second point of error and reverse the award of exemplary damages.

## C. Juror Disqualification / Misconduct

■■■■■ If a potential juror is biased or prejudiced for or against a party, the trial court must disqualify that person from service. TEX. GOV'T CODE ANN. § 62.105(4) (Vernon 1998). The Texas Constitution guarantees a litigant to a fair and impartial jury. TEX. CONST. art. I, § 15. "In cases involving juror disqualification, the complainant need not establish that probable injury resulted therefrom before a new trial may be granted." *Compton v. Henrie,* 364 S.W.2d 179, 182 (Tex.1963). Bias is "an inclination toward one side of an issue rather than to the other, but to disqualify, it must appear that the state of

mind of the juror leads to the natural inference that he will not or did nor act with impartiality." *Id.* A complainant must conclusively establish that the juror was disqualified as a matter of law. *Garza v. Tan,* 849 S.W.2d 430 (Tex.App.-Corpus Christi 1993, no writ).

■■■■■ An erroneous or incorrect answer given by a potential juror during voir dire constitutes grounds for a new trial based on jury misconduct. TEX.R. CIV. P. 327(a). A new trial must be granted if the movant establishes: (1) that the misconduct occurred; (2) it was material; and (3) probably caused injury. *Golden Eagle Archery, Inc. v. Jackson,* 24 S.W.3d 362, 372 (Tex.2000). Merely because a prospective juror's answer to a question during voir dire was inaccurate does not establish that the failure to answer correctly was intentional and thus amounted to misconduct. *Wachtendorf v. Harkins & Co.,* 518 S.W.2d 599, 603 (Tex.Civ.App.-San Antonio 1974, no writ). "[D]etermining whether jury misconduct occurred is a question of fact for the trial court, and if there is conflicting evidence on this issue the trial court's finding must be upheld on appeal." *Pharo v. Chambers County,* 922 S.W.2d 945, 948 (Tex.1996).

■■■■■ GreenPoint argues that it is entitled to a new trial based on juror disqualification and/or misconduct. GreenPoint contends that one of the jurors, Tara Barton ("Barton"), was biased against GreenPoint and concealed this during voir dire. Mrs. Perez argues that the evidence does not establish that Barton was biased or committed misconduct.

The trial court held an evidentiary hearing on GreenPoint's motion for new trial. At the hearing, GreenPoint presented evidence that Barton was biased because she had purchased a mobile home for which GreenPoint provided financing. GreenPoint alleged that Barton had an ongoing

dispute with GreenPoint about her mobile home and was seeking legal action against them at the time she was selected to be a juror in the Perez case.

During voir dire, counsel for GreenPoint asked the panel whether anyone had purchased a mobile home in which GreenPoint was the lender. After counsel had talked to several other prospective jurors about this, Barton raised her hand and informed him that she had purchased a mobile home in 1998 in which a company called Green-Tree was the lender. Upon further questioning, she stated that there was nothing that would cause her not to be a fair and impartial juror. GreenPoint contends that Barton intentionally concealed the fact that GreenPoint was her lender and not GreenTree, and that this shows her bias as a matter of law.

At the evidentiary hearing, Barton admitted that she now understands Green-Point was the lender on her mobile home. There was evidence presented that Barton did experience problems with her mobile home and had corresponded with Green-Point about those problems. Baron testified at the hearing that she simply made a mistake about who the lender was. She stated that she never paid attention to who she made her monthly payments, only the amount. She stated on direct examination and redirect that she was not biased against GreenPoint and served as a fair and impartial juror.

GreenPoint did not conclusively established that Barton was biased as a matter of law. *Garza,* 849 S.W.2d at 430. It appears that she simply made a mistake about who her lender was. Mrs. Perez presented evidence that the account had been assigned several times, meaning there had been as many as three different lenders since Barton purchased the mobile home. When she was first negotiating the purchase of her mobile home, Barton com-

pleted a credit application with a company named GreenTree. In addition, the evidence showed that Barton's attorney handled most of the correspondence with GreenPoint regarding any future legal action Barton might seek against them. Furthermore, GreenPoint has not proven that Barton's incorrect answer amounted to juror misconduct. Because the evidence presented at the evidentiary hearing was conflicting, we must uphold the trial court's determination that no misconduct occurred. *Pharo,* 922 S.W.2d at 948. We overrule GreenPoint's third point of error.

### D. Improper Jury Argument

 After a trial has been bifurcated, evidence that is relevant only to the amount of exemplary damages that may be awarded is not admissible during the first phase of the trial. Tex. Civ. Prac. & Rem. Code Ann. § 42.011(b) (Vernon 1997). Any error in improper jury argument is waived if the complaining party does not object or request an instruction to disregard. *Barras v. Monsanto Co.,* 831 S.W.2d 859, 864–65 (Tex.App.-Houston [14th Dist.] 1992, writ denied). However, an objection is not required if the error is deemed to be incurable. *Macias v. Ramos,* 917 S.W.2d 371, 375 (Tex.App.-San Antonio 1996, no writ). An incurable error in jury argument is one, when viewed in light of the entire record, was so inflammatory as to strike at the heart of the adversarial process or appeal to fundamental prejudices. *Id.* "There are only rare instances of incurable harm from improper jury argument." *Standard Fire Ins. Co. v. Reese,* 584 S.W.2d 835, 839 (Tex.1979).

 GreenPoint argues that counsel for Mrs. Perez improperly interjected GreenPoint's net worth into voir dire, opening statement, and closing argument after the trial had been bifurcated. Mrs. Perez contends that GreenPoint waived

the right to complain about the comments by not objecting to such comments on several occasions during the trial. Mrs. Perez further argues that the comments do not rise to the level of incurable harm.

There were comments by Mrs. Perez's attorney on GreenPoint's net worth during voir dire and opening statement, as well as during closing argument. Beyond that though the record is not clear. There is no motion in limine in the record, nor is there any clear record that if there was one, it was ever ruled upon. Nor was the motion to bifurcate made until the voir dire was well in progress. After the voir dire and opening statements were completed, GreenPoint complained there had been a violation of the motion in limine during opening statements in regards to mentioning the net worth of GreenPoint. If the trial judge believed that he had made such an order and that it had been violated, it is not obvious from the record. The trial judge simply said that he was bifurcating the trial and that "out of fairness" counsel should be careful.

Other than the above, it is not completely clear when the trial was bifurcated. The record does, however, indicate that GreenPoint did not object to counsel's comments on several occasions. Thus, GreenPoint has waived any right to complain on appeal unless it can show incurable harm. *See Ramos*, 917 S.W.2d at 375. We do not believe this is one of those rare occasions where the harm from an improper jury argument is incurable. *See Reese*, 584 S.W.2d at 839. GreenPoint has not identified any case law holding that comments about a defendant's net worth are "so inflammatory as to strike at the heart of the adversarial process or appeal to fundamental prejudices." *See Ramos*, 917 S.W.2d at 375. We overrule GreenPoint's fourth point of error.

### CONCLUSION

The portion of the trial court's judgment awarding $10,000,000 in exemplary damages is reversed, and judgment is rendered that Mrs. Perez is not entitled to recover any exemplary damages. In all other respects, the judgment of the trial court is affirmed.