# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00115-CV

**Skipper Lay and Ellis Lay, Appellants**

**v.**

**Francis J. Whelan, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
### NO. GN001490, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Skipper and Ellis Lay appeal the judgment of the trial court denying their request for an injunction to prevent their neighbor Francis J. Whelan from constructing a large structure behind his home. We hold the evidence is legally and factually sufficient to support the jury's verdict that the restrictive covenant controlling this construction had been waived and affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Whelan and the Lays are home owners in the Southland Oaks subdivision in Austin, Texas. The homes in Southland Oaks are situated on one-acre lots, and use of the property is governed by restrictive covenants.

Whelan purchased his home in 1998. He noticed at that time that his neighbors Jennifer and Bart Galle were constructing a large garage in back of their home. Whelan assisted the Galles in constructing their 90' x 25' garage and planned on building a similar structure in his own backyard. The structure was intended to store his cars, his truck, and his boat; it included a work space, a bathroom, and an extra room for his children to use. Whelan discussed his planned construction with Lee Wilson, who was a member of the neighborhood's architectural control committee.[1] Wilson suggested a number of changes to Whelan's original plan for a garage. Ultimately, Whelan concluded that he would build a 60' x 60' steel framed one-story garage. He planned to finish the garage with masonry and roofing materials to match the construction of his home. Whelan obtained the necessary permit from the county and began construction in December 1999. His construction drew the attention of his neighbors when the large steel girders forming the frame of the building were erected.

In May 2000, the Lays and other neighbors[2] filed suit against Whelan alleging that his construction violated the restrictive covenants governing the properties in the neighborhood and seeking to enjoin him from constructing the 60' x 60' garage. Specifically, the Lays asserted that Whelan's garage violated a provision of the restrictive covenants that limited the types of buildings that could be added to the residence on the property to "one detached single family dwelling not to

---

[1] The restrictive covenants set up an architectural control committee to oversee compliance with, and approve waivers and modifications of the covenants. Although members of the architectural control committee were to be elected every three years, the last election was held in 1997 and only Lee Wilson's term had not expired at the time this suit was filed.

[2] The plaintiffs in the original suit were the Lays, Michael and Kathryn Shulman, and James and Brenda Robinson. Only the Lays are named in this appeal. For convenience we will refer to all the plaintiffs in the trial proceeding as "the Lays."

exceed two and one-half stories in height, and a private garage for no fewer than two or more than four cars." As the litigation proceeded, the Lays added complaints that Whelan's removal of trees in his backyard, the visibility of a trailer on the property, and the placement of a fence in his front yard also violated provisions of the restrictive covenants. Whelan admitted that his planned construction was in violation, but asserted that his neighbors had waived enforcement of the restrictive covenants by allowing other non-conforming structures to be built. He also argued that the fence, the trailer, and his removal of trees did not violate the restrictive covenants. The case proceeded to a jury trial.

Prior to trial, Whelan's attorney wrote a letter to the Lays' attorney stating that Whelan no longer intended to build the 60' x 60' garage. Instead, the letter stated that Whelan had decided to build a structure identical in dimension to the Galles' 90' x 25' garage. Upon receipt of this letter, the Lays' attorney signed his name at the bottom, scrawled "Rule 11 Agreement" on the top, and filed it with the court. The Lays subsequently filed their Fourth Amended Petition and continued to seek an injunction barring Whelan from building the 60' x 60' garage and damages of $200 per day for Whelan's ongoing violation of the restrictive covenants. *See* Tex. Prop. Code Ann. § 202.004(c) (West 1995).

A jury trial was held in August 2002 in which Whelan and a number of neighbors testified. Whelan stipulated that the construction of either a 60' x 60' or a 90' x 25' structure would violate the restrictive covenants. He also testified that he no longer intended to build the 60' x 60' structure; his attorney represented this concession to the jury in his opening argument. The primary

3

issue at trial was whether enforcement of the restrictive covenants had been waived. Evidence was taken regarding several non-conforming structures in the neighborhood. The jury was instructed:

> [F]ailure to comply with the Restrictive Covenants by Mr. Whelan is excused if compliance has been waived. Waiver is an intentional surrender of a known right or intentional conduct inconsistent with claiming that right. In order to support a waiver of residential restrictions the proposed use must not be substantially different in its effect on the neighborhood from any prior violation that was waived.

The jury found that Whelan's failure to comply with the restrictive covenants was excused with regard to construction of a 60' x 60' structure and a 90' x 25' structure. It also found that Whelan failed to comply with the restrictive covenants regarding the construction of the fence, but that his placement of a trailer and his removal of trees did not violate the restrictive covenants. The jury awarded $1,724.33 in attorney's fees to the Lays,[3] but did not award any fees in the event of an appeal. The Lays filed a motion for judgment notwithstanding the verdict, contending that there was no evidence to support the jury's finding that the restrictive covenants were waived or that Whelan had not violated certain aspects of the covenants, that the verdict was inconsistent with the July 18 "Rule 11 Agreement" letter, that the court's judgment should reflect Whelan's testimony that he would replace trees on his property, and that they were entitled to more than the $1,724.33 awarded as attorney's fees. This motion was denied in all respects, and the court entered a judgment consistent with the jury's findings. The Lays filed a motion for new trial, which was denied on January 31, 2003. This appeal followed.

---

[3] This amount reflects only those attorney's fees associated with the prosecution of the Lays' successful claim relating to Whelan's fence.

## DISCUSSION

The Lays raise issues on appeal contending that the trial court failed to incorporate a rule 11 agreement into its final judgment; that there was insufficient evidence to support the jury's verdict with regard to the merits of the dispute, as well as attorney's fees; and that the trial court erred in awarding costs to Whelan.

### Rule 11 Agreement

In their first issue, the Lays contend that the trial court erred in failing to incorporate into its final judgment a rule 11 agreement that Whelan would not build the planned 60' x 60' structure. On July 18, 2002, Whelan's attorney sent a letter to the Lays' attorney informing him that Whelan had withdrawn his declaratory judgment action for a judicial determination whether his planned garage was permissible and giving notice "that [Whelan] will not build the 60' x 60' garage that is the subject of the Court's temporary injunction and Plaintiffs' petition in this matter." The letter was a unilateral statement by Whelan and did not require any reciprocal action by the Lays. It was not designated a rule 11 agreement by Whelan's attorney. On July 22, 2002, the Lays' attorney signed and dated the bottom of this letter and unilaterally inserted "Rule 11 Agreement" at the top of the page. He then filed the letter as a rule 11 agreement with a copy to Whelan's attorney. Despite Whelan's concession, in their fourth amended petition the Lays included their claim seeking an injunction preventing Whelan from constructing the 60' x 60' structure and seeking $200 per day in damages under section 202.004 of the property code. *See* Tex. Prop. Code Ann. § 202.004(c).

5

After Whelan prevailed at trial on this claim, the Lays sought to enforce the letter as a rule 11 agreement by incorporating it into the judgment.

Although compliance with the procedural requirements of rule 11 is necessary for enforcement under the rule, rule 11 agreements are also governed by substantive contract law. *See Mantas v. Fifth Court of Appeals*, 925 S.W.2d 656, 658 (Tex. 1996); *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995); *Ebner v. First State Bank of Smithville*, 27 S.W.3d 287, 297 (Tex. App.—Austin 2000, pet. denied). A letter from the opposing party making a unilateral promise may not be made enforceable just by writing "Rule 11 Agreement" across the top, signing and filing the document. *But see Chase Manhattan v. Bowles*, 52 S.W.3d 871, 881 (Tex. App.—Waco 2001, no pet.) (finding letter from bank unilaterally promising not to initiate foreclosure proceedings enforceable, but reversing trial court's enforcement of promise). Rule 11 presumes that there is, in fact, an agreement. Tex. R. Civ. P. 11 ("no agreement between attorneys or parties touching any suit will be enforced").

Here, the letter was merely a notice that Whelan would withdraw his declaratory judgment action and that he did not intend to build the 60' x 60' structure. There was no reciprocal action required of or agreed to by the Lays and thus there was no agreement. *See Roark v. Stalworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991) (consideration for purpose of establishing a contract "is a present exchange bargained for in return for a promise"). Furthermore, we reject the Lays' contention that there was an agreement for the purposes of rule 11 because Whelan received the benefit of appearing to take a more reasonable litigation position before the jury; any such benefit was not the result of an exchange between the parties. *See id.* Although we note that Whelan has

6

testified under oath that he will not build the 60' x 60' structure, we hold that the letter submitted by Whelan's counsel, and signed and filed by the Lays' attorney, was a unilateral promise and did not represent an enforceable agreement under rule 11. *See* Tex. R. Civ. P. 11. We overrule the Lays' first issue.

**Sufficiency of the Evidence**

The Lays contend that there was no evidence, or factually insufficient evidence, to show that the restrictive covenants governing the subdivision were waived as applied to Whelan's planned construction of either the 60' x 60' structure or the 90' x 25' structure; that the jury's finding that Whelan's removal of trees was not in violation of the restrictive covenants was against the great weight and preponderance of the evidence; and that the jury's award of attorney's fees of $1,724.33 was against the great weight and preponderance of the evidence.

When reviewing a legal sufficiency or no-evidence challenge, we consider all the evidence in the light most favorable to the finding, making every reasonable inference in its favor. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285-86 (Tex. 1998). We will uphold the finding if more than a scintilla of evidence supports it. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995). More than a scintilla of evidence exists when the evidence supporting the finding as a whole "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

When reviewing a factual-sufficiency challenge, we conduct a neutral review of all the evidence and uphold the jury's verdict unless we find that (1) the evidence is too weak to support

7

the finding or (2) the finding is so against the overwhelming weight of the evidence as to be manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Roundville Partners, L.L.C. v. Jones*, 118 S.W.3d 73, 78 (Tex. App.—Austin 2003, no pet.). We will not substitute our judgment for that of the jury merely because we might reach a different conclusion. *Roundville Partners, L.L.C.*, 118 S.W.3d at 78; *The Cadle Co. v. Regency Homes, Inc.,* 21 S.W.3d 670, 674 (Tex. App.—Austin 2000, pet. denied).

Waiver of Restrictive Covenants

In order to find a waiver of a residential restrictive covenant, the proposed non-conforming structure must not have a substantially different effect on the neighborhood than any prior violation. *Sharpstown Civic Ass'n, Inc. v. Pickett*, 697 S.W.2d 956, 957 (Tex. 1984). There is no waiver of restrictive covenants if prior unobjected to violations are insignificant or insubstantial when compared to the proposed new use. *Id.*; *Stewart v. Welsh*, 178 S.W.2d 506, 508 (Tex. 1944) ("where violations have not been permitted to such an extent as to evidence an abandonment of the plan, a grantee will not be prevented from objecting to further violations by the fact that he has not objected to previous violations by others, particularly where such violations do not immediately affect the enjoyment of his own premises, or where they were trivial in character as compared with those complained of"). This Court has explained that to carry the burden of demonstrating a waiver of restrictive covenants, a party must prove that "the violations then existing were so extensive and material as to reasonably lead to the conclusion that the restrictions had been abandoned." *Cox v. Melson-Fulsom*, 956 S.W.2d 791, 794 (Tex. App.—Austin 1997, no pet.); *Zent v. Murrow*, 476 S.W.2d 875, 880 (Tex. Civ. App.—Austin 1972, no writ). The number, nature and severity of the

8

existing violations, any prior acts of enforcement, and whether it is still possible to realize to a substantial degree the benefits sought to be obtained through the covenants are factors to be considered in determining waiver. *Cox*, 956 S.W.2d at 794; *Finklestein v. Southhampton Civic Club*, 675 S.W.2d 271, 278 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); *New Jerusalem Baptist Church, Inc. v. City of Houston*, 598 S.W.2d 666, 669 (Tex. Civ. App.—Houston [14th Dist.] 1980, no writ).

Whelan's argument that the restrictive covenant barring the construction of a garage for more than four cars had been waived as to his proposed construction focused on four existing structures built by other neighbors in violation of that restriction. The subdivision contains only thirty-five lots. The majority of the structures discussed at trial were constructed with the approval of the neighborhood's architectural control committee. The most significant non-conforming structure is the 90' x 25' garage built by Whelan's neighbors, the Galles. The Galle structure is a substantial limestone-faced building with a double garage door, a single garage door, and a double door along the 90' front of the building. Photographs of the Galle structure in the record show that the rear of the building abuts a neighbor's yard very near the fence line, and that when viewed from that yard, the structure's presence is unmistakable. Another photo of the Galle structure in the record demonstrates that the structure is clearly visible from the street. The Galles live less than a block away from Whelan. Whelan testified he modeled his structure on the Galles' structure.

The Lays presented testimony from various neighbors that Whelan's structure had a greater impact on the neighborhood than did the Galles' garage or any of the other non-conforming structures. The neighbors also testified that none of them individually intended to waive

9

enforcement of the restrictive covenants by failing to object to the other structures and that they believed the Whelan structure had reduced their property values. The Lays also presented the testimony of a professional real estate appraiser who gave his opinion that the construction lessened the property values of the homes in the neighborhood. The tax appraisal district records from one neighbor's home were introduced showing that the appraisal district lowered its market value appraisal of a home neighboring Whelan's.

On appeal, the Lays placed considerable weight on the fact that Whelan had not formally sought the approval of the neighborhood's architectural control committee as required under the restrictive covenants. Even if this committee continued to exist at the time Whelan began construction, the jury was not instructed on the applicability of this restrictive covenant and no questions were submitted on the issue. *See Brown v. Bank of Galveston, Nat'l Ass'n*, 963 S.W.2d 511, 515 (Tex. 1998) (failure to request jury instruction on disputed fact issue waives claim on appeal). Furthermore, Whelan consulted with the one member of the committee whose term had not expired by the time of the lawsuit and adopted all of the recommendations made by that member.

We have viewed the photographs in the record and note that a jury could have reasonably concluded that the Galle structure is a very severe violation of the restrictive covenants and that it appears equally imposing on neighboring property as the proposed Whelan structure; there are a number of other existing structures in violation of the restrictive covenants; and there is no evidence of any actions taken to enforce the covenants, indeed most of the non-conforming structures had been approved by the architectural control committee. *See Cox*, 956 S.W.2d at 794. The jury could have reasonably found that the Whelan structure, whether it was configured at 60' x 60' or 90'

10

x 25', would not alter the neighborhood as to deprive the property owners to a substantial degree of the benefits sought by the restrictive covenants any more substantially than the Galle structure or the other non-conforming structures. *See id*.

Although the Lays presented the testimony of an expert appraiser and neighbors that the Whelan structure had a greater negative impact visually and in terms of property value on the neighborhood than the Galle structure, the appraiser admitted on cross-examination that he had not based his opinion on actual sales of property. The jury was entitled to give whatever weight to the Lays' witnesses it deemed appropriate. *See Southwest Tex. Coors, Inc. v. Morales*, 948 S.W.2d 948, 950 (Tex. App.—San Antonio 1997, no writ) (appellate court does not pass on credibility of witnesses or weight given their testimony, and does not interfere with jury's resolution of conflicting evidence). We cannot conclude that the evidence supporting the jury's verdict was so weak as to be unsupported by the evidence or so against the overwhelming weight of the evidence as to be manifestly unjust. *See Cain*, 709 S.W.2d at 176. We therefore overrule the Lays' second and third issues.

Removal of Trees

The Lays contend in their fourth issue that the jury's determination that Whelan's removal of trees did not violate a provision of the restrictive covenants requiring that all "grading of the construction site shall be done to the maximum practicable extent without damaging existing trees" was against the great weight and preponderance of the evidence. We will reverse the jury's failure to find that Whelan did not comply with the restrictive covenant regarding the destruction of oak trees only if we conclude that the failure to find is so contrary to the overwhelming weight of

11

the evidence as to be manifestly unjust. *Waring v. Wommack*, 945 S.W.2d 889, 893 (Tex. App.—Austin 1997, no pet.). Although the Lays presented testimony from several neighbors that Whelan cut down an unnecessary number of oak trees in his back yard, Whelan testified that he made efforts to preserve the trees and that the majority of the trees he cut were undesirable scrub and hackberry trees. Weighing all of the evidence, we decline to second-guess the jury's determination that Whelan's conduct did not violate the restrictive covenant. *See Southwest Tex. Coors, Inc.*, 948 S.W.2d at 950; *Corpus Christi Area Teachers Credit Union v. Hernandez*, 814 S.W.2d 195, 197 (Tex. App.—San Antonio 1991, no writ). We overrule the Lays' fourth issue.

Attorney's Fees

The Lays contend in their fifth issue that the jury's award of attorney's fees in the amount of $1,724.33 was against the great weight and preponderance of the evidence. They ask this Court to render judgment awarding attorney's fees in the amount of $38,711.70, with $5,000 for the present appeal, and an additional $5,000 in the event of a petition for discretionary review to the supreme court. The Lays' contention that they are entitled to their full attorney's fees is based upon their assertion that they are the prevailing party because the evidence was insufficient to support the jury's verdict and that they were entitled to incorporate Whelan's concession not to build the 60' x 60' structure into the judgment. Having rejected these contentions, we also find that the Lays are not entitled to additional attorney's fees for those issues on which they did not prevail.

The Lays also assert that the jury's award of no attorney's fees for an appeal was against the great weight and preponderance of the evidence. Because we affirm the judgment,

12

however, we need not consider an issue regarding attorney's fees in the event the Lays succeed on appeal. We overrule their fifth issue.

**Costs**

The Lays contend in their sixth issue that the trial court abused its discretion in awarding costs to Whelan. The Lays again assert that they were the prevailing party in the litigation because they were entitled to incorporate Whelan's concession not to build the 60' x 60' structure into the judgment. Because we reject the Lays' contention that Whelan's concession should have been incorporated into the judgment, we hold that Whelan was the prevailing party on the main issues litigated. *See Hawkins v. Ehler*, 100 S.W.3d 534, 544 (Tex. App.—Fort Worth 2003, no pet.) (prevailing party successfully prosecutes action or successfully defends against it, prevailing on main issue, even though not necessarily to extent of original contention). Thus, we overrule the Lays' sixth and final issue.

## CONCLUSION

Having overruled all of the Lays' issues, we affirm the trial court's judgment incorporating the jury's verdict.

_____

Bea Ann Smith, Justice

Before Justices B. A. Smith, Patterson and Pemberton

Affirmed

Filed: July 1, 2004

13